UNITED STATES *v.* SOUTHERN PAC. R. Co. *et al.*, (two cases.)

*(Circuit Court, S. D. California.     June 22, 1891.)*

1. RAILROAD COMPANIES—AMALGAMATION—CONGRESSIONAL GRANTS.
The act of congress of March 3, 1871, authorized the Southern Pacific Railroad Company of California, subject to the laws of California, to construct a certain line of railroad, and granted it certain lands.     The Southern Pacific Railroad Company, as it then existed, accepted said grant, and filed its plat of definite location in the proper office August 12, 1873.     Said Southern Pacific Railroad Company, as authorized by the laws of California in force at the time of the passage of the act of congress, consolidated with other companies under the name of the Southern Pacific Railroad Company, a part of its object, as stated in the articles of amalgamation, being to construct the railroad mentioned in said act.     Thereafter said consolidated company completely built said road, as required by said act, and the road so built was accepted by the president, and has performed, to the satisfaction of the government, all the services required of it under said act.     *Held*, that said consolidated company if not, technically, is, substantially, the same company to which said act referred.     Affirming *Railroad Co.* v. *Poole*, 12 Sawy. 544, 32 Fed. Rep. 451; *U. S.* v. *Railroad Co.*, and *U. S.* v. *Colton, etc., Co.*, 45 Fed. Rep. 596.

2. AMALGAMATION—RECOGNIZED BY CONGRESS.
Pursuant to state authority, recognized by and made a part of the congressional grant of March 3, 1871, the S. P. R. R. Co., April 15, 1871, filed amended articles of

incorporation; and August 12, 1873, filed, together with the S. P. Branch R. R. Co., articles of amalgamation and consolidation, under the name of the S. P. R. R. Co. *Held*, that while in one sense a new corporation was formed, each was substantially and practically the same S. P. R. R. Co. mentioned in the acts of congress, and was so recognized by congress, and that the articles of amendment, amalgamation and consolidation were authorized by congressional as well as by state legislation.

3. SAME.
Commissioners having from time to time been appointed to report in regard to the construction of the Southern Pacific Railroad, the road having been accepted by the president, and having been used by the government in the transportation of mail, military stores, etc. *Held*, that these acts were acts recognizing the defendant company as the S. P. R. R. Co. to which the act of March 3, 1871, applies, and that the defendant company, being subject to burdens imposed by the act, is entitled to the benefits conferred by it as a consideration for those burdens.

4. RAILROAD COMPANIES—SUCCESSORS AND ASSIGNS.
Act Cong. July 27, 1866, having expressly granted lands to the S. P. R. R. Co., *its successors and assigns*, it is *held*, that if the consolidated company, with the amended articles of incorporation, is not technically the same corporation, referred to in act March 3, 1871, it is within the express provisions of the grant, being the *successor or assign* of said company.

5. SAME. ·
Inchoate grants were not contemplated by congress when it provided for deductions, but lands that had been effectively granted, and to which the title has passed, or shall effectively pass, and finally become effectively vested in the grantees upon the performance of the prescribed conditions.

6. SAME—PROVISO IN GRANTS.
The section of Act Cong. March 3, 1871, granting lands to the Southern Pacific Railroad Company, provided that said section should in no way affect or impair the rights, present or prospective, of the Atlantic & Pacific Company. *Held*, that this language did not constitute an exception from the grant, nor a reservation in favor of the United States, but that it made the grant to the Southern Pacific Railroad Company subject and subordinate to any rights the Atlantic & Pacific Company, a · prior grantee, may then have secured, or might thereafter acquire under the law.

7. SAME.
The present and prospective rights of the Atlantic & Pacific Company were to secure the odd sections of land provided for along the line of the road they should build by actually building the road and earning the lands by performing the acts required. Their rights were to earn the lands, and not to obtain them without earning them.

8. SAME—FORFEITURE.
As the Atlantic & Pacific Company never did comply with the condition of the grant to it, and as all of its rights thereunder became forfeited in 1886, by act of congress, because of such non-compliance, its rights have never ripened into an effective grant, and now they never can so ripen. The only condition imposed upon the grant to the Southern Pacific Railroad Company has thus become inoperative.

9. SAME—FAILURE OF PRIOR GRANT.
The Southern Pacific Railroad Company, having performed all the conditions required of it by the act of 1871, thereby acquired a right to the odd sections for the prescribed distance on each side of the road, subject only to be defeated by the Atlantic & Pacific Company having an older grant, and filing its map of definite location, and performing the other conditions necessary to earn the lands; but the Atlantic & Pacific Company never having performed said conditions, and its grant having been declared forfeited by congress, the lands never were granted to it, within the meaning of the act of congress, and the grant to the Southern Pacific Railroad Company therefore became effective and perfect without in any way affecting or impairing any rights of the Atlantic & Pacific Company.

10. SAME—ACT OF 1886—EFFECT OF ON GRANT.
No claim in the act of July 27, 1866, granting lands to the Atlantic & Pacific Company under the facts before stated defeats the grant to the Southern Pacific Railroad Company to the odd sections lying within the primary limits of the grant.

*(Syllabus by the Court.)*

In Equity.

*W. H. H. Miller*, Atty. Gen., *Willoughby Cole*, U. S. Atty., and *Joseph H. Call*, Sp. Asst. U. S. Atty.

*Joseph D. Redding* and *Chapman & Hendrick*, for defendants.

Before SAWYER, Circuit Judge, and ROSS, District Judge.

SAWYER, J. These are suits brought against the Southern Pacific Railroad Company, and parties who have purchased the land described, and derived title thereto from the Southern Pacific Railroad Company, to determine the adverse claim of title to said lands and to restrain defendants from cutting timber thereon, or from hereafter setting up any claim of title to said lands. The lands involved in suit No. 177 are sections 1, 11, and 13 of township 3, and section 35 of township 4 N., of range 15 W., San Bernardino meridian; and those in suit No. 178, section 23, township 4 N., range 15 W., same meridian. These lands are claimed by defendants under the act of congress of March 3, 1871, "to incorporate the Texas Pacific Railroad Co., and to aid in the construction of its road, and for other purposes." **16 St. 573.** Section 23 of said act is as follows:

"That for the purpose of connecting the Texas Pacific Railroad with the city of San Francisco, the Southern Pacific Railroad Company of California is hereby authorized (*subject to the laws of California*) to construct a line of railroad from a point at or near Tehachapa Pass, by way of Los Angeles, to the Texas Pacific Railroad at or near the Colorado river, with the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions as were granted to said Southern Pacific Railroad Company of California, by the act of July twenty-seven, eighteen hundred and sixty-six." **16 St. 579.**

Section 18 of the act conferring rights upon the Atlantic & Pacific Railroad, referred to in the section quoted and conferring the rights under which defendants claim, is in the following language:

"That the Southern Pacific Railroad, a company incorporated under the laws of the state of California, is hereby authorized to connect with the said Atlantic & Pacific Railroad, formed under this act, at such point, near the boundary line of the state of California, as they shall deem most suitable for a railroad line to San Francisco, and shall have a uniform gauge and rate of freight or fare with said road; and in consideration thereof, to aid in its construction, shall have similar grants of land, subject to all the conditions and limitations herein provided, and shall be required to construct its road on the like regulations, as to time and manner, with the Atlantic & Pacific Railroad herein provided for."

And the provision of the same act, made applicable to the Southern Pacific Railroad Company, and granting it lands putting it upon the same footing in all particulars with the Atlantic & Pacific Railroad Company incorporated by the same act, is as follows:

"And be it further enacted, that there be and hereby is granted to the Atlantic & Pacific Railroad Company, [substitute Southern Pacific Railroad Company,] its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific Coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the route of said line of railway and its branches, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any state, and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated.

and free from pre-emption or other claims or rights, at the time the line of said road is designated by a plat thereof, filed in the office of the commissioner of the general land-office; and whenever, prior to said time, any of said sections or parts of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including the reserved numbers: provided, that if said route shall be found upon the line of any other railroad route, to aid in the construction of which lands have been *heretofore granted* by the United States, as far as the routes are upon the same general line, the amount of land heretofore granted, shall be deducted from the amount granted by this act." 14 St. 294, § 3.

Substitute in this section the words, "the Southern Pacific Railroad Company" for the words, "the Atlantic & Pacific Railroad Company," and we shall have the grant to the Southern Pacific Railroad Company both by the act of 1866, and the act of 1871. Soon after the passage of the said act of March 3, 1871, to-wit: on April 3, 1871, the Southern Pacific Railroad Company as it then existed, designated the line of its road from Tehatchapa Pass by way of Los Angeles, to Fort Yuma, on the Colorado river, which it on that day filed in the office of the commissioner of the general land-office, and thereby the grant under said act of congress attached to all the odd sections of land, to which it could attach under the provisions of said act of congress. Afterwards, on the 12th day of August, 1873, the said Southern Pacific Railroad Company, in all respects as authorized by the laws of the state of California, existing and in force before and at the time of the passage of said act of congress of March 3, 1871, incorporating the Texas Pacific Railroad Company, amalgamated and consolidated with several smaller companies as shown by Exhibits A, B, annexed to the bill of complaint in these cases; the said consolidated company being called by the name of "The Southern Pacific Railroad Company," a part of the object stated in said articles of amalgamation being to construct "a line of railroad from a point at or near Tehachapa Pass by way of Los Angeles, to the Texas Pacific Railroad at or near the Colorado river, a distance of three hundred and twenty-four miles as near as may be," in pursuance of said provisions granting the right so to build a railroad to the Southern Pacific Railroad Company as provided in said section 23, in said act, incorporating said Texas Pacific Railroad Company, hereinbefore cited, said company having been amalgamated and consolidated under the same name and style as the principal company so incorporated and amalgamated, viz.: "The Southern Pacific Railroad Company." The said amalgamated and consolidated company afterwards built the said railroad along the line so hereinbefore designated from Tehachapa Pass by the way of Los Angeles to the Colorado river, and fully completed the same within the time, and in all respects, as required by said act of congress; and the said several sections were examined from time to time, and reported upon to the president by commissioners appointed for the purpose, and the whole line accepted by the president. Ever since its completion and acceptance,

the said road has performed to the satisfaction of the United States government, all the services, such as carrying the mails, transporting troops, supplies, etc., in all respects as required by the provisions of said act of congress incorporating the Texas Pacific Railroad Company; and said services have been accepted by the United States.

The Atlantic & Pacific Railroad Company, on March 12, 1872, long subsequent to the definite location of the line of the Southern Pacific line, and after it commenced building its road, filed in the office of the secretary of the interior—not in the office of the commissioner of the general land-office—two maps of portions of a line of road in the state of California. These were the first maps of any part of the contemplated road in California ever filed. These maps are designated "Master's Exhibits Nos. 122 and 127." Some time subsequently, the said company filed in the same office, two other maps designated "Master's Exhibits Nos. 130 and 131." These are the only maps filed relating to the location of the California portion of the Atlantic & Pacific road. The Atlantic & Pacific Railroad Company never constructed any portion of the road authorized to be constructed by it, in the state of California; and for failure to construct said road or any part of it, congress, on July 6, 1886, passed an act declaring a forfeiture of all lands within the state of California, before granted to it, to aid in the construction of the road. 24 St. 123. The line of the Atlantic & Pacific Railroad, as shown upon said maps filed in the office of the secretary of the interior, crosses the line of the Southern Pacific Railroad as located by its said maps and as constructed from Tehachapa Pass by the way of Los Angeles to the Colorado river, but said lines are not located along the same general route. The lands in controversy lie within 20 miles of both of said lines as so located and shown, where they cross each other. The said lands have been conveyed by the said Southern Pacific Railroad Company, respondent, which constructed its road as aforesaid, to the other respondents to this suit, and the title so conveyed, is now vested in them.

The first point made by complainants is, that the present Southern Pacific Railroad Company, which built the road after the amalgamation and consolidation with sundry smaller roads mentioned, under the same name as the old company, and professedly for the same purpose, made in pursuance of the statutes of the state of California, authorizing such consolidation and amalgamation, which statutes were in force at the date of the congressional grant in question, and prior to which consolidation the grant by congress was made, and which road was to be built in accordance with the laws of the state of California, is not the identical Southern Pacific Railroad Company, to which the act referred, and the grant was made, and therefore, that the defendant took nothing under the act of congress. This point is not new in this court, as it was fully considered and overruled in *Railroad Co.* v. *Poole,* 12 Sawy. 544, 545, 32 Fed. Rep. 451. Again, the point was made and earnestly urged in the southern district of California, in *U. S.* v. *Railroad Co.* and *U. S.* v. *Colton, etc., Co.,* and the district judge in an able opinion, concurred in, on this point, by the circuit judge, thoroughly examined the point, and overruled it, cit-

ing with approval also, the case of *Railroad Co.* v. *Poole*, referred to, and affirming it. (14 Sawy. 623, 45 Fed. Rep. 596 *et seq.*) See, also, *Railroad Co.* v. *Orton*, 6 Sawy. 160, 32 Fed. Rep. 457. We shall adhere to the ruling made in these cases till the point is otherwise determined by the supreme court.

It is earnestly urged on the part of the respondents, that the filing in the office of the *secretary of the interior*, of the fragmentary maps of the location of the line of the contemplated Atlantic & Pacific road, and to points not authorized by the law, does not constitute a location of the line in such sense, or legal form, as to give any right whatever under the act, to the Atlantic & Pacific Company; and, that, it in no way affects the action or rights of the Southern Pacific Company. For the purposes of this case, however, without deciding, or discussing the matter, I shall assume that the filing of these maps in the office of the secretary of the interior, instead of the commissioner of the general land-office, to have been so far regular, and in accordance with the law granting the rights contemplated to the company, since, upon the view I take upon the rights of the parties, and of the effect of the act forfeiting the grant to the Atlantic & Pacific Company, it will not be necessary to decide the point raised.

The only remaining question is, whether, in view of all the facts of the case, the clause in the provision of section 23 in the act of 1871, "that this section shall in no way affect or impair the rights, present, or prospective, of the Atlantic & Pacific Railroad Company, or any other railroad company," or any clause in the act of 1866, under the facts of the case, defeats the grant to the Southern Pacific Railroad Company to these lands, which lie within the primary limits of the grant? This question did not arise in *U. S.* v. *Railroad Co.* and *U. S.* v. *Colton, etc., Co.*, 14 Sawy. 620, 45 Fed. Rep. 596. It is now directly presented however, and we address ourselves to its consideration and solution. In my judgment, neither the proviso to section 23 of the act of 1871, nor any provision of the act of 1866, defeats the title to the lands in question, in view of all the facts in the case. That proviso is as follows: "Provided however, that this section shall in no way affect or impair the *rights present or prospective* of the Atlantic & Pacific Railroad Company, or any other company." Now what is the fair import of this language? What was the intent of congress, in view of the important objects sought, in making the grant to respondents, in adopting this peculiar language? It is not the language of exception from the grant, of any lands that the Atlantic & Pacific Company might lay claim to without earning them under the statute. It is not the language of exception at all. On the contrary, it merely made the grant to defendant, subordinate, and subject to any rights, that the Atlantic & Pacific Company may then have secured, or might thereafter, acquire under the law, authorizing it to acquire lands, by the performance of the acts prescribed. Congress intended that the respondent should not interfere with any lands which that other company should lawfully earn. It simply intended to protect any rights, that it should acquire, by performing the required acts.

What were "the rights, present and prospective of the Atlantic & Pacific Railroad Company?" Their rights were to secure the odd sections of land provided for along the line of *the road they should build, by actually building the road, and earning the lands by performing the acts required. Their rights were to earn the lands, and not to obtain them without earning them.* Congress has nowhere provided, or contemplated, that this company should file a plat of a route for a railroad, and then play the role of the dog in the manger, and neither build the road itself, and thereby earn the lands, nor allow the respondents to build one, and earn the lands under another grant. The Atlantic & Pacific Company never did anything to earn these lands, except to file, what it was pleased to term a "map of the location of its route," six years after the date of the grant, and one year after the respondent had located its road under the grant, made five years subsequently, and after it had commenced buildng the road; and for failure to comply with the terms of the grant, by the Atlantic & Pacific Company, congress, in 1886, (24 St. 123, 124,) passed an act forfeiting its right to earn these lands altogether. Thus its rights "present" and "prospective," have never ripened into an effective grant, and now they never can so ripen. They now have, and can have no further rights in these lands, whether the respondents get them or not. The building of its road, by the respondents, and earning these lands, which the other party has itself failed to earn, and now never can earn, can in no possible way "affect or impair" any rights the other company now has, or ever did have. And had that company built the road, and earned the lands, the respondent would not have got them, for that would have been to affect or impair its rights.

The *present* right of the Atlantic & Pacific Company was to earn the lands by the performance of the required conditions, and the *prospective* rights, the right to have the lands when so earned. This is all there is of it, and it did neither. Now the grant to the Southern Pacific, being subject, and subordinate, to those rights, could not in any way, or in any degree, have affected, or impaired them, because the Atlantic & Pacific Railroad Company, had it performed the conditions would have taken the said land under the act. It utterly failed to perform the conditions, and all its rights have been forfeited, and now the patenting of the lands to the Southern Pacific cannot in any way possible affect any of these rights which do not now exist. Thus the rights of the Atlantic & Pacific Company present or prospective, never could have been affected by the acts of the Southern Pacific, which only took the lands in case the other company did not. It seems to me, that any other view, is utterly untenable. The respondent was in the position, that it was compelled to take its grant subordinate, and subject to the prior grant. It only took what would not be required to satisfy the prior valid claim, had the work been performed. The prior claimant failed to acquire any real right to the lands, by earning them, and they were forfeited and left to the respondent to earn under its grant, and it has faithfully earned them without in the slightest degree "affecting or impairing any prior rights" "present or prospective," and it now cannot impair them. It

seems to me, that the respondent is justly entitled to these lands under its grant. An exception, from a grant, is an entirely different matter from taking a grant subject to other claims or rights, as is, manifestly, the case here. When the other claims are satisfied, or lost, the grantee, subject to those rights, takes what is left. The proviso in section 23 of the act of 1871, *seems to me, clearly to prescribe all the limitations intended by congress in that act to be put upon the grant to respondent.* It is specific and clear on this point, and, only intended to be subject to any rights that should be actually acquired and perfected under any prior act. The reference to the act of 1866, does not modify the provision in this particular section. It puts no restriction upon respondent, not expressly put upon the Southern Pacific Company by the act of 1866, and that act, in the precise language used, taken literally, or substantially, does not affect this point. In that act, the Southern Pacific Company was put upon the precise footing with the Atlantic & Pacific Company. Both took under the same act, upon equal terms. In the act of 1871, the Southern Pacific Company was put upon the same footing as the Southern Pacific Company was put by the act of 1866. The proviso in section 3 of the latter act is—

"That if said route shall be found upon the line of any other railroad route, to aid in the construction of which lands have been heretofore granted by the United States, *as far as the routes are upon the same general line,* the amount of land *heretofore* granted shall be deducted from the amount granted by this act."

The language is "*have been heretofore granted;*" that is to say, granted *before the passage of the act of 1866, not the act of 1871.* The rights of the Southern Pacific, granted by section 18 were not affected by any act that should be thereafter passed, and the rights of the Southern Pacific Company under the act of 1871, are the same as those of the Southern Pacific Company under the act of 1866, and under this proviso are only affected by grants made *prior to the passage of the act of 1866.* To hold otherwise, would be, to change the language of the acts. But the line of the Southern Pacific road is not on the line of the "Atlantic and Pacific" route as designated on what is claimed to be its map of location. The two roads are not "upon the same general line." They simply cross each other. But again: The fair construction of this proviso, and as it was intended by congress, in view of the object sought, is, that "lands that have *heretofore* been granted," and "the amount of land" to be dedicated, means lands that have been *effectively granted,* and to which the title has passed, or shall *effectively pass out of the United States, and finally become effectively vested in the grantees upon the performance of the prescribed conditions.* It does not mean inchoate grants, that are not finally perfected—grants that become forfeited by failure to earn them by performing the prescribed conditions or any of them. These do not, ultimately, become grants at all, within the meaning of the act, and intent of congress. Congress was anxious to procure the construction of these great works, for military, mail-carrying, and other uses, and thereby also develop the resources of the country, and make a market for the public

lands.  It contributed *nothing*, because it received double price for the even sections.  In these provisions, it was, only solicitous to protect the vested rights of prior grantees in lands fairly earned in constructing works of a similar kind in pursuance of a similar policy.  It did not seek, by forfeitures, to evade its obligations to subsequent roads, and thereby increase its own property, at the expense of those who, actually carry out the objects of the law, and fairly earn the lands intended for them.  We cannot attribute any such unworthy purpose, or motive to congress.  It manifestly, intended, that the subsequent grantees should take the odd sections subject only to prior rights, and when the prior grants failed, and finally, became no grants, by reasons of a failure to perform the conditions necessary to perfect the grant, and when no rights can possibly be further affected by the grant to the subsequent grantee, that the latter, upon complying with the terms of its grant should have the lands, not ultimately, or effectively granted under the prior acts of congress.  Effective, completed grants only, are contemplated in this proviso.

Now, in my judgment, the case is clearly this, and nothing more.  The act of 1866 gave the Atlantic & Pacific Company the right to build a railroad with the right of location within the provisions of the acts; to receive the odd sections of land along the general line of its route, upon building the road as required, but upon no other conditions.  The grantee did not, for six years, do anything to locate its road in the state of California, or earn the grant.  The act of 1871 was passed, making a similar grant to respondent, subject however to any prior rights of the other company.  *Within a month* it filed its map of location, and immediately, went to work and continued till it performed all the required conditions, had its road completed, and accepted by the president, and earned its lands.  By filing its map of definite location, it acquired a right to the odd sections for the prescribed distance on each side of the road, subject *only* to be defeated by the Atlantic & Pacific Company, having an older grant, by filing its map of definite location, *and then performing the other conditions necessary to earn the lands.*  At the time of locating the Southern Pacific line, there was nothing to indicate that the Atlantic & Pacific would ever move in the matter.  A year afterwards, and six years after the date of its grant, the Atlantic & Pacific Company filed what is claimed to be its definite location; and by that act, if properly done, and not already *too late*, under the law, it acquired what?  Not a perfect, or complete title, to the land but at most a temporary provisional title, with a right to build the road, earn the lands, along its line, perfect its title, and defeat the right of the respondents to acquire the land.  But it did nothing more, and, after waiting 20 years for it, without anything more being done, congress passed the act referred to, forfeiting its grant, and the lands never were fully granted—never became granted, within the reasonable meaning of the act of congress providing for deducting therefrom subsequent grants, and thereby the grant to respondents became effective and perfect, without in the slightest degree, or "in any way," "affecting" or "impairing any right," "present or prospective" of the

Atlantic & Pacific Company, or any other prior grantee. If this be not the true view of the case, then no lands could have been acquired by the respondents under its grants, and the act, purporting to be a grant, as to it, was a dead letter—a mere illusion; for, if the acts mentioned, performed by the Atlantic & Pacific Company, at that date could utterly defeat the grant of these lands as to the respondents, any location respondents could have made, could have been defeated by similar action, and the thereafter, non-action of the Atlantic & Pacific Company; for it could subsequently locate upon the same line, in the same sense, as that upon which respondents did locate, and in the same manner, defeat the latter grant.

I am, therefore, of the opinion, that the earning and acquiring of these lands by the respondents, under the conditions shown by the record, in no way affected, or impaired, the "rights present or prospective," of the Atlantic & Pacific Railroad Company, or any other, within the meaning of the act of congress; and that, these lands are not lands heretofore, or at any time, granted by the act of congress in such sense as to require them to be deducted along the general line of the road, or otherwise, within the meaning of the acts of congress of 1866, and 1871, or of either of them.

Under the views expressed, the amended bills must be dismissed, and it is so ordered, without costs.

Ross, J. These cases have been argued and submitted together. The suits are brought to quiet the complainants' alleged title to certain lands and to enjoin defendant from asserting or claiming any title thereto. The lands are claimed by the defendant by virtue of the act of congress of March 3, 1871, entitled "An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes." 16 St. U. S. 573. By the 23d section of that act it was provided as follows:

"That for the purpose of connecting the Texas Pacific Railroad with the city of San Francisco, the Southern Pacific Railroad Company of California is hereby authorized (subject to the laws of California) to construct a line of railroad from a point at or near Tehachapa Pass, by way of Los Angeles, to the Texas Pacific Railroad at or near the Colorado river, with the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions as were granted to said Southern Pacific Railroad Company of California by the act of July 27, 1866: provided, however, that this section shall in no way affect or impair the rights, present or prospective, of the Atlantic and Pacific Railroad Company, or any other railroad company."

The evidence in the case shows that the defendant company accepted this grant and on the 3d of April, 1871, filed in the office of the commissioner of the general land-office, a plat showing the definite location of the road it was thereby authorized to build, and proceeded to build it and completed its construction, to the satisfaction of the government, in January, 1878. It thereby earned the lands embraced by the grant to it. The point that the present Southern Pacific Railroad Company is not the same Southern Pacific Railroad Company to which the act of

March 3, 1871, applied, was decided against the government in the recent cases of *U. S.* v. *Railroad Co.* and *U. S.* v. *Colton, etc., Co.*, 45 Fed. Rep. 596, (March 6, 1891.) The reasons for so holding were given at length in the opinions then rendered, and need not now be repeated.

It is admitted that the lands in controversy in the present suits are situate within 20 miles of the line of road so located and built by the Southern Pacific Company, but as they are also within 20 miles of the line that the Atlantic & Pacific Railroad Company, under the act of congress of July 27, 1866, designated for its road, it is earnestly contended on behalf of the government that they are excluded from the grant to the Southern Pacific Company. When the cases of *U. S.* v. *Railroad Co.* and *U. S.* v. *Colton, etc., Co.*, 39 Fed. Rep. 132, were before the court on demurrers to the bills—the lands then involved being within the *indemnity* limits of the Atlantic & Pacific grant and within the primary limits of that to the Southern Pacific Company—it was said:

"Had they been situated within 20 miles of the designated route of the Atlantic & Pacific Company they would clearly have fallen within the grant to that company and consequently have been excluded from the subsequent grant to the Southern Pacific Company; for, if the construction above put upon the act of July 27, 1866, be the correct one, every alternate section of public land, designated by odd numbers, within 20 miles of the line of the road, as definitely fixed, would have passed to the Atlantic & Pacific Company as of the date of its grant."

That, though *obiter*, would undoubtedly have been so had the Atlantic & Pacific Company earned the lands by building the road for which the grant was made. But is it true where it appears that the road was not built and where the grant to the Atlantic & Pacific Company for that reason has been subsequently declared forfeited by congress? is the question now involved and to be decided. The grant to the Atlantic & Pacific Company was the prior grant—it having been made by the act of July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line in the states of Missouri and Arkansas to the Pacific coast." 14 St. U. S. 293. By that act the Atlantic & Pacific Company was authorized to construct a railroad—

"Beginning at or near the town of Springfield, in the state of Missouri, thence to the western boundary of said state, and thence, by the most eligible railroad route as shall be determined by the said company, to a point on the Canadian river; thence to the town of Albuquerque on the river Del Norte, and thence by way of the Agua Frio or other suitable pass to the headwaters of the Colorado Chiquito, and thence along the 35th parallel of latitude, as near as may be found most suitable for a railroad route, to the Colorado river at such point as may be selected by said company for crossing; thence by the most practicable and eligible route to the Pacific."

To aid in the construction of the road there was granted to the Atlantic & Pacific Company, by the third section of the act, every alternate section of public land, not mineral, designated by odd numbers, to the amount of 10 sections on each side of the road whenever it passes through a state—

"And whenever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption

or other claims or rights, at the time the line of said road is designated by a plat thereof filed in the office of the commissioner of the general land-office, and whenever," etc.

The Atlantic & Pacific Company did nothing towards locating its line of road in California until March 12, 1872, and never did do anything towards building it; in consequence of which congress, in 1886, passed an act declaring its land grant forfeited. In the mean time, that is to say, March 3, 1871, the grant under which the defendant company claims the lands in controversy was made. Those lands were at that date public lands of the United States, for it is not pretended that the Atlantic & Pacific Company designated the route of its road prior to March, 1872, and its grant, as has been seen, was only for such public lands, designated by odd numbers and non-mineral in character, as should fall within the designated limits and be, *at the time the line of its road should be designated by a plat thereof filed in the office of the commissioner of the general land-office,* not reserved, sold, granted, or otherwise appropriated and free from pre-emption or other claims or rights. No valid reason, therefore, existed why congress could not include the lands in controversy in the grant it made to the Southern Pacific Railroad Company. Did it do so? The act of March 3, 1871, refers to that of July 27, 1866, for the terms of the grant thereby made to the Southern Pacific Company to aid it in building a road from a point at or near Tehachapi Pass, by way of Los Angeles, to the Texas Pacific Railroad at or near the Colorado river, for the purpose of connecting the Texas Pacific Railroad with the city of San Francisco. The grant was for 10 odd-numbered sections of public land, not mineral, on each side of the road. As has already been said, the lands in controversy here were at that time public lands of the United States. They are within 20 miles of the line of road the Southern Pacific Company was by the act of March 3, 1871, authorized to locate and build and which it did locate and build and which the government accepted as having been built in compliance with the terms of that act and which it has since used for its own purposes. The lands in controversy are therefore within the primary limits of that grant and justly belong to the Southern Pacific Company unless there be something in the act of March 3, 1871, excluding them from the grant thereby made to it. It is urged that such exclusion is effected by the concluding clause of the section making the grant, which is in these words: "Provided, however, that this section shall in no way affect or impair the rights, present or prospective, of the Atlantic & Pacific Railroad Company, or any other railroad company."

It is plain that this clause is not in the form of an exception from the grant. Congress was, of course, aware of its previous grant to the Atlantic & Pacific Company of date July 27, 1866, and being desirous of making that to the Southern Pacific Company subordinate and subject to its previous grants, inserted the proviso that the grant to the Southern Pacific Company should "in no way affect or impair the rights, present or prospective, of the Atlantic & Pacific Company, or any other railroad company." This is by no means saying, nor is it the equivalent of say-

ing, that any public lands of the United States that would otherwise be embraced by the grant to the Southern Pacific Company should be excluded from that grant. It was not to reserve anything to the United States, but to protect the "present and prospective" rights of the Atlantic & Pacific Company and any other railroad company to which congress may have made grants of lands that the proviso was inserted. Had the line of road the Atlantic & Pacific Company was authorized to build by the act of July 27, 1866, been definitely located at the time of the grant to the Southern Pacific Company of March 3, 1871, and had the Atlantic & Pacific Company thereafter built its road and thereby earned the lands covered by its grant, the lands in controversy would have gone to it without regard to the proviso in question; for its grant which would have attached to such lands at the time of the definite location of the route of its road would have been perfected by the building of the road and the title thus perfected have related back to the date of the grant, July 27, 1866, and of course have excluded any subsequent grant covering the same lands. But the Atlantic & Pacific Company had not designated the route of its road at the time of the grant to the Southern Pacific Company of March 3, 1871. It might do so, however, thereafter and might build the road it was authorized to build and thereby earn the lands embraced by the grant to it of July 27, 1866. It had a "present and prospective" right to do so. If it did both of those things, it would be entitled to the lands granted to it by that act. If it did not do both of those things, it would not be so entitled and the lands would remain as they then were, public lands of the United States. Congress, therefore, in making its grant to the Southern Pacific Company of March 3, 1871, made it subject to those "present and prospective" rights. Had they been perfected by a compliance on the part of the Atlantic & Pacific Company with the conditions on which they were based, the title to the lands in controversy would have become vested in the Atlantic & Pacific Company as of date July 27, 1866. But as that company never did comply with the conditions of the grant and as all of its rights thereunder became forfeited in 1886 by act of congress because of such noncompliance, there remain no rights of that company to be, or that ever can be, affected or impaired by the grant to the Southern Pacific Company of March 3, 1871. The proviso to the twenty-third section of that act, in my opinion, was only intended to protect, and its scope went only to the protection of, the rights of the Atlantic & Pacific Company and any other railroad company to which congress had previously made a grant. It was not intended to reserve to the United States any land that would otherwise be included in the granting clause of the act. The lands in controversy were public lands of the United States at the time of that grant; the terms of the granting clause include them, provided, *only*, that the grant be without prejudice to the present or prospective rights of the Atlantic & Pacific Railroad Company, or any other railroad company. The Atlantic & Pacific Company having forfeited its right to earn the lands in question by failing to build the road it was required to build as a consideration for the grant, it never acquired any title thereto

696 FEDERAL REPORTER, vol. 46.

and thenceforward there remained no right, "present or prospective," to be affected or impaired. When its rights became forfeited (there being no pretense that the case is affected by the rights of any other railroad company than those herein spoken of) there came to an end the only condition imposed by congress upon the grant to the Southern Pacific Company of March 3, 1871.

These views render it unnecessary to determine the question elaborately and ably argued by counsel as to whether there ever was a valid designation of the route of the proposed road of the Atlantic & Pacific Company.

I concur in the dismissal of the amended bill in each case, without costs, and wish to add that I would not have written this brief opinion had I known the circuit judge was engaged in the preparation of an opinion; but as each of us reached the same conclusion in a separate examination of the cases, at his suggestion both opinions are filed.