UNITED STATES v. SOUTHERN PAC. R. CO. et al.

(Circuit Court, S. D. California. June 25, 1894.)

No. 184.

PUBLIC LANDS—PACIFIC RAILROAD GRANTS—FORFEITURE.

Act July 27, 1866 (14 Stat. 292), provided for the organization of the A. & P. R. Co., and granted lands to it to aid in the construction of a railroad between a point in Missouri and the Pacific ocean. Section 18 authorized the S. P. R. Co., a California corporation, to connect with this railroad near the California boundary, and, to aid in the construction of a railroad from there to San Francisco, declared that it "shall have the same grants of land subject to all the conditions herein provided." Act March 3, 1871 (16 Stat. 573), provided for the organization of the T. P. R. Co., with a grant of certain lands, and authorized (section 23) the S. P. R. Co. to construct a connecting railroad from a point on the Colorado river to San Francisco, "with the same rights, grants, and privileges," and subject to the same conditions, as were granted to it by Act July 27, 1866, § 18. *Held*, that the lands granted to the A. & P. R. Co. along the overlapping routes did not pass conditionally to the S. P. R. Co. by the act of 1871, though the A. & P. R. Co. had not complied with its grant at that time, but should be excepted from that grant; and the forfeiture by the A. & P. R. Co. (Act July 6, 1886) of such lands inured to the benefit of the United States rather than to that of the S. P. R. Co. and its grantees. U. S. v. Southern Pac. R. Co., 13 Sup. Ct. 152, 163, 146 U. S. 570, 615, followed.

Bill by the United States against the Southern Pacific Railroad Company and others to recover lands. Decree for complainant.

Joseph H. Call, Sp. Asst. U. S. Atty., and the United States Attorney General, for the United States.

Joseph D. Redding, for defendants.

ROSS, District Judge. This is a suit in equity brought by the United States, the chief object of which is the establishment of

the alleged title of the government to about 700,000 acres of land situated in Los Angeles and Ventura counties, of this state, designated, according to the public surveys of the United States, as odd-numbered sections, and lying within the primary or 20-mile limit of the grant of July 27, 1866, made by congress to the Atlantic & Pacific Railroad Company, and also within the primary limits of the subsequent grant of March 3, 1871, made by congress to the Southern Pacific Railroad Company, and which lands are claimed by the last-named company, and those holding under it, by virtue of its grant. For nearly 100,000 acres of these lands the United States subsequently issued its patents to the Southern Pacific Railroad Company, a large part of which land, so patented, that company conveyed, for a valuable consideration, to third persons, all of which patents and some of which conveyances were executed prior to the institution of this suit. The Southern Pacific Company also contracted in writing with various other persons to convey to them, severally, other portions of said patented lands, and still other of said lands embraced within the limits of its grant. These persons are also made parties defendant to the bill, the objects of which include the annulling of the said patents, and the quieting of the complainant's alleged title to the whole of the lands embraced by the suit. The bill also makes parties defendant D. O. Mills, Garrit L. Lansing, and Lloyd Tevis, as trustees of certain mortgages executed by the Southern Pacific Railroad Company upon the lands covered by its grant, to secure the payment ·of certain bonds issued by it.

By the first section of the act of July 27, 1866 (14 Stat. 292), congress incorporated the Atlantic & Pacific Railroad Company, and authorized it to construct and operate a railroad from a point near the town of Springfield, in the state of Missouri, westward through Albuquerque, "and thence along the 35th parallel of latitude, as near as may be found most suitable for a railway route, to the Colorado river, at such point as may be selected by such company for crossing; thence, by the most practicable and eligible route, to the Pacific" ocean. To aid in the construction of the road, there was granted to the Atlantic & Pacific Company, by the third section of the act, every alternate section of public land not mineral, designated by odd numbers, to the amount of 10 sections on each side of the road whenever it passes through a state, "and whenever, on the line thereof, the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is designated by a plat thereof filed in the office of the commissioner of the general land office, and whenever," etc. The eighteenth section of the act provided as follows:

"That the Southern Pacific Railroad, a company incorporated under the laws of the state of California, is hereby authorized to connect with the said Atlantic & Pacific Railroad formed under this act, at such point near the boundary line of the state of California as they shall deem most suitable for a railroad line to San Francisco, and shall have a uniform gauge and rate of freight or fare with said road; and, in consideration thereof, to aid in its construction, shall have the same grants of land, subject to all the conditions and

limitations herein provided, and shall be required to construct its road under the like regulations as to time and manner with the Atlantic & Pacific Railroad herein provided for."

On March 3, 1871, congress passed an act entitled "An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes." 16 Stat. 573. By the twenty-third section of that act it was provided as follows:

"That for the purpose of connecting the Texas Pacific Railroad with the city of San Francisco, the Southern Pacific Railroad Company of California is hereby authorized (subject to the laws of California) to construct a line of railroad from a point at or near Tehachapa Pass, by way of Los Angeles to the Colorado river, with the same rights, grants and privileges, and subject to the same limitations, restrictions, and conditions, as were granted to said Southern Pacific Railroad Company of California by the act of July 27, 1866: provided, however, that this section shall in no way affect or impair the rights, present or prospective, of the Atlantic & Pacific Railroad Company, or any other railroad company."

These grants were the subject of full consideration in the cases entitled U. S. v. Southern Pac. R. Co. (Nos. 67–69, consolidated), Same v. Colton Marble & Lime Co. (No. 88), and U. S. v. Southern Pac. R. Co. (Nos. 177, 178), reported in 45 Fed. 596, and 46 Fed. 683. My views in regard to them, while meeting with the approval of two of the justices of the supreme court (Justices Field and Gray), were by a majority of the court overruled. The cases in the supreme court will be found reported in 146 U. S. 570, 615, 13 Sup. Ct. 152, 163. A careful examination of the opinions of the majority of the court in those cases shows that it decided, among other things, that it was not the intent of congress that any of the lands embraced by the grant of July 27, 1866, to the Atlantic & Pacific Company should pass conditionally to the Southern Pacific Company by the grant of March 3, 1871, but, on the contrary, that congress intended that all lands embraced by the prior grant to the Atlantic & Pacific Company should be definitely excepted from the later grant to the Southern Pacific Company, and that the Atlantic & Pacific Company having forfeited the lands granted to it by the act of July 27, 1866, by reason of its failure to comply with the conditions upon which the grant was made, and congress having, by the act of July 6, 1886, declared the forfeiture, the latter resulted in restoring the lands to the government.

"The forfeiture," said the court, "was not for the benefit of the Southern Pacific; it was not to enlarge its grant as it stood prior to the act of forfeiture. It had given to the Southern Pacific all that it had agreed to in its original grant; and now, finding that the Atlantic & Pacific was guilty of a breach of a condition subsequent, it elected to enforce a forfeiture for that breach, and a forfeiture for its own benefit."

The court further observed:

"If the act of forfeiture had not been passed by congress, the Atlantic & Pacific could yet construct its road, and that, constructing it, its title to these lands would become perfect."

In those cases the defendant company contended that no map of definite location of its line between the Colorado river and

the Pacific ocean was ever filed by the Atlantic & Pacific Company or approved by the secretary of the interior. The supreme court said that contention was based upon these facts:

"The Atlantic & Pacific Company claimed that, under its charter, it was authorized to build a road from the Colorado river to the Pacific ocean, and thence, along the coast, up to San Francisco; and it filed maps thereof in four sections. San Buenaventura was the point where the westward line first touched the Pacific ocean. One of these maps was of that portion of the line extending from the western boundary of Los Angeles county, a point east of San Buenaventura, and through that place to San Miguel Mission, in the direction of San Francisco. In other words, San Buenaventura was not the terminus of any line of definite location from the Colorado river westward, whether shown by one or more maps, but only an intermediate point on one sectional map. When the four maps were filed, and in 1872, the land department, holding that the Atlantic & Pacific Company was authorized to build, not only from the Colorado river directly to the Pacific ocean, but also thence north to San Francisco, approved them as establishing the line of definite location. Subsequently, and when Mr. Justice Lamar was secretary of the interior, the matter was re-examined, and it was properly held that, under the act of 1866, the grant to the Atlantic & Pacific was exhausted when its line reached the Pacific ocean. San Buenaventura was therefore held to be the western terminus, and the location of the line approved to that point."

And the court held that:

"The fact that its line was located and maps filed thereof in sections is immaterial. St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. 389. Indeed, all the transcontinental roads, it is believed, filed their maps of route in sections. So the question is whether the filing a map of definite location from the Colorado river, through San Buenaventura, to San Francisco, under a claim of right to construct a road the entire distance, is good as a map of definite location from the Colorado river to San Buenaventura, the latter point being the limit of the grant. We think, unquestionably, it is."

In the present case it is urged on the part of the defendants that in the former cases the supreme court determined the questions in relation to the location of the line of the Atlantic & Pacific Company as one of law; that there were no issues of fact in either of those cases in respect to the character of the maps there spoken of, or of the surveys upon which they were based, whereas, in the present case, the pleadings tender issues of fact in respect to all of those matters, upon which a large amount of evidence has been introduced; and this evidence, the defendants contend, establishes that the Atlantic & Pacific Company never did definitely locate its line between the Colorado river and the Pacific ocean, and that the pretended maps of definite location were but fraudulent pretenses, and amounted at most to but a general designation of its contemplated route. In my opinion, the evidence in the present case shows that to be true. It is unnecessary, however, to analyze it, and show the reasons for this conclusion; but it is as well to state that it finds strong support in the fact that if the maps filed by the Atlantic & Pacific Company in 1872, of its route between the Colorado river and the Pacific ocean, were maps of the definite location of its road, it never did file any map or maps designating its general route; for it is not pretended that the Atlantic & Pacific Company made more than one designation of the line in question. Yet the court, in U. S. v. Southern Pac. R. Co., 146 U. S. 600, 13 Sup. Ct. 152, in speaking of this very grant of

July 27, 1866, as well as in the case of Buttz v. Railroad Co., 119 U. S. 55, 7 Sup. Ct. 100, in speaking of the similar grant to the Northern Pacific Company, held that "congress provided for two separate matters,—one, the fixing of the general route; and the other, the designation of the line of definite location." Nevertheless, in view of the rulings of the supreme court in the former cases regarding the grants in question, by which this court, of course, must be controlled, I do not see that it is essential to the government's case that the line of the Atlantic & Pacific Company should have been definitely located; for the surveys made opposite the lands in controversy, and maps thereof filed by it, constituted at least a designation of the general route of the road, upon which designation the law operated to withdraw all lands within the limits of the grant for the benefit of the grantee. Buttz v. Railroad Co., 119 U. S. 55, 7 Sup. Ct. 100; St. Paul & P. R. Co. v. Northern Pac. R. Co., 139 U. S. 1, 11 Sup. Ct. 389. The facts that the Southern Pacific Company had previously, to wit, on the 3d day of April, 1871, filed in the office of the commissioner of the general land office a map designating the general route of the line it was authorized to build, and did build, under and by virtue of the act of March 3, 1871, and that thereafter, to wit, on the 21st of April, 1871, an order was made by the commissioner of the general land office withdrawing all lands within the primary as well as the indemnity limits of that grant from sale, location, pre-emption, or homestead entry, could not, under the rulings of the supreme court in the former cases, in any way affect the prior grant, which up to the time of its forfeiture, on July 6, 1886, remained effective and paramount. While, up to the time of the withdrawal for the benefit of the Southern Pacific Company, and for nearly one year thereafter, the Atlantic & Pacific Company had not filed any map indicating its line of road between the Colorado river and the Pacific ocean, still, when it did do so, in 1872, by maps showing, if not the definite location of its line, at least its general route (its right under its grant being, as decided by the supreme court, wholly unaffected by the subsequent grant to the Southern Pacific Company, and consequently by the proceedings had and taken thereunder), the law itself operated to withdraw all public lands within the limits of the grant to the Atlantic & Pacific Company for the benefit of the grantee (cases supra); and, the rights of that company continuing, as held by the supreme court, until the act of forfeiture passed by congress July 6, 1886, and the forfeiture being for the benefit of the United States, the necessary result is that, when it occurred, the lands were restored to the government, and did not pass to the Southern Pacific Company, or to its grantees, who necessarily took with notice of the grants, for such grants are laws as well as contracts. Missouri, K. & T. Ry. Co. v. Kansas Pac. Ry. Co., 97 U. S. 491; U. S. v. Southern Pac. R. Co., 146 U. S. 598, 13 Sup. Ct. 152.

It results, I think, that there must be a decree for the government; and it is so ordered.