ADELBERT COLLEGE OF WESTERN RESERVE UNIVERSITY *v.* TOLEDO, W. & W. RY. Co. *et al.*

*(Circuit Court, N. D. Ohio, W. D.* September 10, 1891.)

1. REMOVAL OF CAUSES—LOCAL PREJUDICE—AFFIDAVITS ON MOTION TO REMAND.
    When a cause has been removed from a state court to the federal circuit court by an order which recites that, "it appearing to the court from the petitions filed in this cause, and the affidavits thereto attached, that from prejudice or local influence" the petitioners will not "be able to obtain justice" in the state court, the circuit court will not afterwards receive counter-affidavits denying the existence of prejudice, etc., and consider the question of fact anew on a motion to remand.

2. SAME—CONFLICTING DECISIONS.
    When, in a suit by persons owning certain "equipment bonds" of a railroad, the United States supreme court decides that such bonds constitute no lien on the property, and subsequently a state supreme court, in a suit on other bonds of the same series, reaches an opposite conclusion, this latter decision cannot be considered as showing "prejudice or local influence," so as to constitute a ground for removing a third suit, in a subordinate court of the state, on still other bonds of the series, to the federal circuit court.

3. SAME—INTEREST OF REMOVING DEFENDANTS.
    In a suit to assert the lien of certain railroad equipment bonds, the trustees under mortgages to secure subsequent issues of bonds have no interest in the controversy as parties defendant, such as will give them a right to remove the cause to a federal court, when their mortgages have all been foreclosed, and the property sold to a new corporation, under a valid decree of a court of competent jurisdiction.

4. SAME—CITIZENSHIP OF PARTIES—REAL CONTROVERSY.
    In a suit by a corporation in a state court against several railroad companies, their trustees and mortgagees, on certain equipment bonds, the lien whereof was denied by answer, many other holders of the same series of bonds were permitted, with plaintiff's consent, to become parties defendant, and by cross-bills to set up the lien of their bonds. *Held* that, in determining whether the citizenship of the parties was such as to warrant a removal to the federal circuit court on the ground of prejudice and local influence, all the parties asserting the lien of the bonds should be considered as parties plaintiff.

5. SAME.
    When part of the plaintiffs, as thus arranged, are aliens, and others are residents of the same state with some of the removing defendants, the federal court has no jurisdiction.

In Equity. Suit to assert the lien of certain equipment bonds, brought by the Adelbert College of Western Reserve University against the Toledo, Wabash & Western Railway Company, the Wabash Railway

Company, the Wabash, St. Louis & Pacific Railway Company, James R. Jesup, and Isaac H. Knox, as trustees, George I. Seney, trustee, Solon Humphreys and Daniel A. Lindley, as trustees. Various other persons, holding other bonds of the same series, were made parties defendant, and set up their rights by cross-petition. Motion to remand to state court for want of jurisdiction in this court to hear and determine the controversy between the parties.

*George Hoadly*, for plaintiff.
*Rush Taggart*, for defendant.

JACKSON, J. In April, 1883, the Adelbert College, an Ohio corporation, commenced this suit in the court of common pleas of Lucas county, Ohio, against the above-named defendants, upon two bonds of $500 each, with coupons attached, issued in 1862 by the Toledo & Wabash Railway Company, and styled "Equipment Bonds," of which there was a total issue of $600,000. The defendant companies are corporations and citizens of Ohio, Indiana, Illinois, and Missouri. which have successively acquired by consolidations and the foreclosure of mortgages the ownership of the properties of the said Toledo & Wabash Railway Company. The individual defendants are trustees under mortgages executed by the two first-named defendant companies. The plaintiff by its suit seeks to have a lien declared upon the property, etc., that was of the Toledo & Wabash Railway Company, and now owned by its successor in title, and to subject the same to the payment of its said bonds. The succession in title and ownership to the properties sought to be charged, the several mortgages made before and since 1862, by the different companies, down to the acquisition thereof by the Wabash, St. Louis & Pacific Railway Company, and the relief sought. are the same as set forth in the cases of *Compton* v. *Railway Co.*, 45 Ohio St. 592, 16 N. E. Rep. 110, and 18 N. E. Rep. 380, and of *Railway Co.* v. *Ham*, 114 U. S. 587–598, 5 Sup. Ct. Rep. 1081. In the latter case the supreme court of the United States held that said equipment bonds constituted no lien upon the property, franchises, etc., which the defendant companies had acquired or derived through or from the Toledo & Wabash Railway Company. In the case of *Compton* v. *Railway Co.*, the supreme court of Ohio, on precisely the same question and same state of facts, subsequently reached a different conclusion, and sustained the lien which plaintiff is seeking to enforce. Pending this Compton suit, the plaintiff and other holders of equipment bonds sought to have themselves made parties thereto, but this was denied by the state court, on the ground that said Compton's action was for his sole benefit. Thereupon the plaintiff instituted the present suit, which from the prayer of the original petition seems to have been intended for its sole benefit.

On the 24th November, 1883, the Wabash, St. Louis & Pacific Railway Company answered the petition, setting up various matters of defense, including the judgment of the supreme court of the United States in the *Ham Case*, and denying the lien claimed for the equipment bonds. On the 21st May, 1888, said Wabash, St. Louis & Pacific Railway Com-

pany filed an amended answer, setting up other matters of defense, among which was the fact that, under foreclosure proceedings commenced in 1884 by trustees of mortgages executed by said railway company, the circuit court of the United States for the northern district of Ohio and district of Indiana had appointed receivers of its properties, etc., who were still in possession thereof; that subsequently the trustees of mortgages prior in date and lien to the said equipment bonds had commenced foreclosure proceedings in the circuit courts of the United States for the proper districts, and that said courts were proceeding to foreclose such prior mortgages, having by their receivers and the said suits exclusive jurisdiction over the property which plaintiff sought to have charged; and that plaintiff should be remitted to said circuit courts for the determination and enforcement of its said claim. On December 27, 1888, the plaintiff filed its amended and supplemental petition, making James Compton, who had in the mean time obtained a decree in the supreme court of Ohio establishing the lien of his equipment bonds, a party defendant, and claiming that he had no priority of payment, and asking that the proceeds of the property directed to be sold to satisfy his judgment should be distributed to plaintiff, "concurrently and co-equally" with said Compton, and, if necessary, to consolidate said causes, and make full inquiry and finding as to any and all liens upon said railway property, and the proceeds to arise from the sale of the same, "to the end that said railway property, when it shall be sold, shall pass, free and clear of all incumbrances, to the purchasers thereof, with the view of making the same bring the largest possible price at such sale." At this stage of the proceedings in the plaintiff's suit, William F. Redmond and various others appeared, and on January 4, 1889, made application to said state court to be made parties defendant therein, with leave to file answer and cross-petition; and, the plaintiff consenting thereto, the court granted their application, ordered said applicants to be admitted as parties defendant, with leave, as such, "to file answer and cross-petition herein, for the benefit of themselves alone, or also for the benefit of other persons and corporations who may not have joined them in making such application, and to have and enjoy all the rights, privileges, and benefits of parties defendant herein." Said Redmond and others accordingly, on January 5, 1889, filed their answer and cross-petition in said cause, setting forth that they were holders of a large number of said equipment bonds, admitting all the allegations of the original and amended petitions, except the admission that certain mortgages, prior in date to said bonds, constituted a superior lien on the property sought to be charged with the payment of their claims.

By their cross-petition, after stating their respective holdings of said equipment bonds, they allege that there are a large number of other bonds of the same class and issue still outstanding in the hands of sundry persons, partnerships, and corporations, unknown to them, in whose behalf, if they will appear and join in the cross-petition, as well as on their own behalf, the petitioners file said cross-petition. They repeat the allegations of the original petition relating to the consolidation in

1865 of the Toledo & Wabash Railway Company with other railroad companies, forming the Toledo, Wabash & Western Railway Company; the mortgages made by the latter in 1867 and 1873 to James R. Jesup and Isaac H. Knox, as trustees, to secure issues of its bonds for $15,-000,000 and $5,000,000, respectively; the foreclosure in 1875 of the 1873 mortgage for $5,000,000; the sale of its property, rights, and franchises thereunder, and the purchase thereof by John W. Ellis and others, as a purchasing committee; the formation of the Wabash Railway Company, and the conveyance to it by said purchasing committee of the entire line of railway, with its equipment, rights, properties, and franchises; the execution in 1877 by said Wabash Railway Company of its mortgage upon said properties to George I. Seney, trustee, and in 1879 a further mortgage to Solon Humphreys and Daniel A. Lindley, trustees; the consolidation in October, 1879, of said Wabash Railway Company with the St. Louis, Kansas City & Northern Railway Company, a Missouri corporation, forming the Wabash, St. Louis & Pacific Railway Company; the execution of the latter of its mortgage to the Central Trust Company of New York and James Cheney, of Indiana, to secure a large issue of consolidated bonds; the proceedings instituted by said Wabash, St. Louis & Pacific Railway Company and said trustees in 1884 to foreclose said mortgage in the United States circuit courts of Ohio, Indiana, Illinois, and Missouri; the sale of its road, franchises, etc., in 1886, and the purchase thereof by, and conveyance to, James F. Joy, of Michigan, Ossian D. Ashley and Thomas H. Hubbard, of New York, and Edgar T. Wells, of Connecticut, as a purchasing committee, under certain plan of reorganization entered into by a majority of bondholders of said railway company,—all which consolidations, mortgages, and foreclosure proceedings it is alleged in no way affected the lien of said equipment bonds upon the properties of the said Toledo & Wabash Railway Company, to which said several companies and their trustees under mortgages succeeded.

It is further shown in said cross-petition that the said Toledo & Wabash Railway Company, which issued said equipment bonds, was a consolidated corporation; that its constituent divisions had issued bonds secured by mortgages executed prior to the issuance of said equipment bond, one of said mortgages being made by the Toledo & Illinois Railway Company in 1853 to the Farmers' Loan & Trust Company, a New York corporation, as trustee, to secure bonds of said railway company to the amount of $900,000; that another of said constituent divisions, the old Toledo & Wabash Railway Company, before the consolidation which formed the Toledo & Wabash Railway Company, had, in October, 1858, executed a mortgage upon its line of road, property, franchises, etc., to Edwin D. Morgan as trustee, to secure its mortgage bonds to the amount of $1,000,000; that, said Morgan having died before the execution of said trust, James F. Joy, of Detroit, Mich., was appointed trustee in his place. The cross-petition alleged that said two mortgages were not valid incumbrances upon the property of the Toledo & Wabash

Railway Company consolidated, which issued said equipment bonds, and constituted no prior lien to the same. In addition to the parties named as defendants in plaintiff's original and first supplemental and amended petition, the cross-petitioners made the Farmers' Loan & Trust Company, a corporation of New York, as trustee, the Central Trust Company of New York and James Cheney, of Indiana, as trustees, James F. Joy, of Michigan, as trustee, parties defendant; and its prayer for relief was that said equipment bonds, and unpaid interest warrants thereto attached, might be held and declared a first and prior lien and incumbrance upon all said railway premises, properties, and franchises, for the benefit of all holders of said bonds, and that they be first paid out of the proceeds arising from the sale of said properties which the court was asked to decree. Cross-petitioners claiming that this proceeding came within the provision of section 5048 of the Revised Statutes of Ohio, publication was asked for and had, under the provisions of section 5022 and 5044 of said Revised Statutes, for all non-resident defendants. Humphrey and Lindley, as trustees, appeared and demurred to the petitions. On March 16, 1889, James F. Joy, as trustee, filed his answer, setting up said mortgage of October, 1858, and further, that, subsequently to the suit of the Central Trust Company against the Wabash, St. Louis & Pacific Railway Company, referred to in the previous pleadings, Thomas Atkins and other holders of bonds issued by the Toledo, Wabash & Western Railway Company and by the Wabash Railway Company under the consolidated mortgages of 1867 and 1879, had filed their bills in the United States circuit courts of Ohio, Indiana, and Illinois for the foreclosure of said mortgages; that all trustees under prior divisional mortgages were made parties thereto; that said trustees under such prior divisional mortgages, including himself as trustee under the mortgage of October, 1858, had brought separate suits in said courts to foreclose their respective mortgages; that all of said suits were in 1888, by order of said United States circuit courts, consolidated under the style and title of *James R. Jesup et al.* v. *Wabash, St. Louis & Pacific Ry. Co. et al.*; that in said consolidated cause said Joy, as trustee under said mortgage of 1858, had filed a cross-bill to enforce the lien of said mortgage, and have the same foreclosed, by a sale of the mortgaged premises; that said United States circuit courts were in the possession of the premises by their receiver, which had been continued since 1884, etc. On April 8, 1889, the Farmers' Loan & Trust Company filed its answer, setting up the mortgage of 1853, made by the Toledo & Illinois Railway Company, and a further mortgage, executed by the Lake Erie, Wabash & St. Louis Railroad Company in January, 1856.

On April 29, 1889, James F. Joy, as trustee, filed a supplemental answer, setting up, among other things, the decree of the United States circuit courts in said consolidated causes, foreclosing all mortgages upon the property involved, directing a sale thereof on May 15, 1889, and adjusting the priorities of all liens upon the same, or the proceeds thereof. Said decree was passed March 23, 1889. On October 16, 1889, the

plaintiff, by leave of court, filed its second supplemental and amended petition, setting forth that, under said decree of the United States circuits in said consolidated causes, the properties in question had been sold and purchased by said purchasing committee, Hubbard, Ashley, Joy, and Wells; that the sale had been confirmed; that said purchasing committee had conveyed said properties and franchises to a newly-incorporated company, organized under the laws of Ohio, called "Wabash Railroad Co.," and alleged that, by virtue of said foreclosure proceedings, decree, and sale, the said prior divisional mortgages of 1853 and 1858 to Joy and the Farmers' Loan & Trust Company, as trustees, had become extinguished, and the liens thereof discharged, leaving the lien of said equipment bonds superior to the rights of said Wabash Railroad Company, which was made a defendant. The cross-petitioners, Redmond and others, filed a similar amended cross-petition, making said Wabash Railroad Company a defendant, and claiming the same rights and priority of lien as the plaintiff. On December 18, 1889, said Wabash Railroad Company filed its answer, setting out fully and in detail the proceedings under which it had acquired title to the premises, and claiming that the property in its hands was not subject to the lien of said equipment bonds. In this stage of the pleadings and proceedings in the state court, James F. Joy, as trustee, and Solon Humphreys and Daniel A. Lindley, as trustees under the mortgages of 1858 and 1879, made, respectively, by the Toledo & Wabash Railway Company and by the Wabash Railway Company, presented their petitions to the United States circuit court for the northern district of Ohio, western division, asking for a removal of said suit from the state court to said circuit court, on the ground of prejudice and local influence and of the refusal of the supreme court of Ohio in the *Compton Case* to follow the adjudication of the supreme court of the United States in the *Ham Suit*, upon the question of the lien of said equipment bonds, and in holding contrary thereto; which decision of the supreme court of Ohio, it was alleged, would be followed by all other courts of the state to which the suit could be transferred. The petitions for removal alleged, in the language of the acts of 1887 and 1888, that, "from prejudice or local influence, this defendant will not be able to obtain justice in said state court situated in the county of Lucas, or in any other state court to which the said defendant may have the right to remove the cause, on account of such prejudice or local influence;" and were accompanied by the affidavits of the petitioners that they knew the contents thereof, and "that the same is true of his [their] own knowledge." The petition alleges that the matter in controversy exceeded the sum of $2,000, interest and costs; that James F. Joy was at the commencement of the suit, and still was, a citizen and resident of Michigan; that Solon Humphreys and Daniel A. Lindley were at said date, and still were, citizens and residents, respectively, of the states of New Jersey and New York; and that the Adelbert College, the plaintiff in said suit, was at said date a corporation of Ohio. Proper bonds were tendered. On December 3, 1890, the circuit court, RICKS, J., presiding, made the following order in the premises:

"It appearing to the court from the petitions filed in this cause, and the affidavits thereto attached, that from prejudice or local influence Solon Humphreys, Daniel A. Lindley, and James F. Joy will not be able to obtain justice in the court of common pleas of Lucas county, Ohio, or in any other state court to which the said petitioners would or could, under the laws of the state of Ohio, have the right, on account of such prejudice or local influence, to remove this cause, and that they are therefore entitled to have the removal which they seek, it is accordingly ordered that this cause be, and the same is hereby, removed from the common pleas of Lucas county to this court."

A transcript of the record was thereupon filed, and the suit docketed in said circuit court.

In May, 1891, the plaintiff and cross-petitioners moved to have the cause remanded to the state court on the following grounds:

"(1) That this court was without jurisdiction to hear and determine the cause:

"(2) Because the decree rendered by the supreme court of Ohio in the *Compton Suit,* and the refusal of said court to follow the previous adjudication of the supreme court of the United States in the *Ham Case* on the same question, did not in law constitute prejudice or local influence, so as to prevent the said removing defendants from being able to obtain justice in the state courts.

"(3) Because, in fact, there exists no such prejudice or local influence as alleged.

"(4) Because cross-petitioners Mary L. Olivera and Jane A. Sullivan were aliens, and not citizens of any state of the United States; that the executors of said Jane A. Sullivan, viz., Dr. W. P. News and T. E. Stephens, are aliens, and citizens of Great Britain and Ireland.

"(5) Because James Walker, one of the cross-petitioners in the state suit, was at the time, and ever since has been, a citizen and resident of the state of Michigan, whereof James F. Joy was and still is a citizen and resident.

"(6) Because plaintiff and cross-petitioner Israel M. Simon, another cross-petitioner, were and still are citizens of Ohio, and that the several defendant corporations are and were citizens of the same state.

"(7) Because John W. Alling, another cross-petitioner, was at the time of filing said cross-petition, and ever since has been, a citizen and resident of the state of Connecticut, being the same state whereof the defendant Edgar T. Wells is a citizen and resident.

"(8) Because William P. Redmond, Henry W. Smith, John S. A. Witke, and Benjamin F. Ham, cross-petitioners, were at the time of filing their cross-petition, ever since have been, and still are, citizens and residents of the state of New Jersey, being the same state whereof Solon Humphreys was, and ever since has been, a citizen and resident.

"(9,) (10,) (11,) and (12) Because cross-petitioners Vassar Brothers' Hospital, Preston Wing, since deceased, and Sheldon Wing and William H. Sheldon, his executors, Gustavus Rollins, survivor of Edward A. Rollins, late partners, Henry F. James, Clarence Morfit, Charles G. Peters, George B. Mead, Walter M. Aikman, and Eliza Mead, executors of H. R. Mead, deceased, William C. Cramer, Frederick K. Hubbard, Eugene E. Bishop, James Moir, Charles E. Thorn, John B. Manning, Charles S. Webb, Edward Litchfield, James M. Ham, David Kohn, Wm. M. Kohn, and Edward Pepper, partners under style of Kohn, Pepper & Co., were each of them, at the time of filing said cross-petition or petitions, ever since have been, and still are, citizens and residents of the state of New York, being the same state whereof David A. Lindley, one of the removing parties, was at said date, and still is, a citizen and resident."

Affidavits denying the existence of prejudice or local influence, and giving the citizenship of the several cross-petitioners as stated, are filed in support of the motion to remand.

It having been made "to appear to this court" in December, 1890, that from prejudice or local influence the petitioners for removal could or would not be able to obtain justice in the state courts, and the order for the removal of the suit having been then made, it would not be proper now to receive or consider counter-affidavits denying the existence of any such prejudice or local influence, and thus raise an issue on the fact. The court, in the exercise of a legal discretion, having been satisfied with the *prima facie* showing made by the petitions for removal and accompanying affidavits, its action in ordering the removal cannot be properly called in question, or be set aside thereafter upon affidavits disputing the fact of the existence of prejudice or local influence. There is no requirement in the statute that the opposing side shall have notice of the application to remove on that ground, and be allowed an opportunity to be heard thereon. It would, perhaps, be the better practice to give the opposite party notice of the application to remove before action thereon by this court; but that is a matter resting in the discretion of the court, and not a matter of right. It would, however, be a most anomalous proceeding to have an issue made up and tried as to the existence of prejudice or local influence after it had been made "to appear to this court" in a legal way that from prejudice or local influence the party applying for removal would not be able to obtain justice in the state court or courts, and after the removal had been ordered. The action of the court in ordering the removal in the present case is not in conflict with the rulings of the supreme court in *Re Pennsylvania Co.*, 137 U. S. 456, 457, 11 Sup. Ct. Rep. 143.

Again it does not appear that the action of the presiding judge in ordering the removal was rested on or predicated to any extent on the alleged refusal of the supreme court of Ohio to recognize or follow the adjudication of the supreme court of the United States in the *Ham Case.* This conflict of opinion and decision between said courts on the question of the lien of said equipment bonds does not constitute the "prejudice or local influence" contemplated by the removal acts of congress. The question passed upon by both courts was one of general commercial law, dependent for its proper solution upon the proper construction of the consolidating agreement under which the Toledo & Wabash Railway Company was formed, and on that question courts of concurrent jurisdiction might reach different conclusions, without subjecting either to any imputation of "prejudice or local influence." Such differences of opinion between the courts was certainly not the "prejudice or local influence" which the law contemplates as furnishing a ground or reason for removing a suit from one jurisdiction to another. Webster defines "prejudice" as follows:

"An opinion or decision of mind formed without due examination; prejudgment; a bias, or leaning towards one side or the other of a question from other considerations than those belonging to it; an unreasonable predilection

or prepossession for or against anything; especially, an opinion or leaning adverse to anything, formed without proper grounds or before suitable knowledge.".

It is in this general sense that the removal acts use the word "prejudice," and it cannot properly be applied to the solemn judgment of the highest court of a state on the mere ground that said judgment differs from that of the supreme court of the United States on the same question. The term "local influence," if not synonomous with "prejudice," manifestly refers to an improper influence exerted by or existing in favor of one side, or against the other, which will prevent the latter from obtaining justice in the state courts. The "prejudice or local influence" which the law meant to make the grounds of removal may relate to the person of the litigant or the subject-matter of the litigation; but in either case there must exist improper bias, partiality, unreasonable predilection, or hostility in the local community or courts, which will work injustice, or prevent the party seeking a removal from obtaining justice.

If in any case a state court's decision can be made the ground of removal, it must be alleged and shown that such decision proceeded, not from error or mistake of law, but from that improper bias or unreasonable predilection which constitutes the "prejudice" or "local influence" contemplated by the law. The petition for removal in the present case alleged no such improper bias in respect to the decision of the supreme court of Ohio in the *Compton Case*, which it is said the state courts will follow. If the removal had been ordered on this branch of the petitions, the action of the court would have been erroneous, and the second ground assigned for remanding the cause would have to be sustained. The general question presented by the other grounds in support of the motion to remand is whether the suit involved a controversy, within the intent and meaning of the act, between citizens of the state in which it was brought and a citizen or citizens of another state, so as to give this court jurisdiction to hear and determine the same. This question is not controlled by the fact that it has been made to appear to this court that from prejudice or local influence the remaining parties could not obtain justice in the state court or courts, or by the removal based thereon. It involves the underlying inquiry, whether, under the pleadings and the citizenship of the parties, there was any right of removal, even assuming the existence of prejudice or local influence. It is not questioned that the various cross-petitioners mentioned in the motion to remand are either aliens or citizens and non-residents of the same states with the remaining defendants. If such cross-petitioners can be properly regarded as joint or co-plaintiffs with the Adelbert College, or if it is proper to arrange them according to the real controversy, without reference to the particular position they occupy in the pleadings, (as the supreme court in the *Removal Cases*, 100 U. S. 469, and in *Harter* v. *Kernochan*, 103 U. S. 566, said might be done to determine the right of removal,) then defendants Joy, Humphreys, and Lindley were not entitled to remove the suit from the state court to this court, because, under such rearrangement of the parties, aliens and citizens of the same states with themselves

would be placed in the attitude of plaintiffs.   Under such circumstances, no right of removal for prejudice or local influence existed under the third subdivision of section 639, Rev. St., embodying the act of 1867. Nor does it exist under the act of 1887, as amended in 1888.   See *Jefferson* v. *Driver*, 117 U. S. 272, 6 Sup. Ct. Rep. 729; *Iron Co.* v. *Ashburn*, 118 U. S. 54, 6 Sup. Ct. Rep. 929; *Hancock* v. *Holbrook*, 119 U. S. 586, 7 Sup. Ct. Rep. 341; *Young* v. *Parker*, 132 U. S. 267, 10 Sup. Ct. Rep. 75, (construing subdivision 3 of section 639, Rev. St.;) and *Thouron* v. *Railway Co.*, 38 Fed. Rep. 673, (construing the provisions of the present law.)   In the latter case, it was held that, if there were one or more plaintiffs citizens of the same state with defendant or defendants, the latter could not remove on the ground of prejudice or local influence, under subdivision 3, § 639, Rev. St.   In order to remove a cause from the state court on the ground of prejudice, it was essential, where there were several plaintiffs or several defendants, that all the necessary parties on one side should be citizens of the state where the suit was brought, and all on the other side citizens of another state or other states, and that all necessary parties on the side seeking a removal should join in the application.   Under the present act "any defendant" may effect the removal, provided the requisite diverse citizenship of the plaintiff or plaintiffs exists as under the act of 1867.   Treating the cross-petitioners as plaintiffs on one side of the controversy involved in the state suit, and a portion of them being aliens, and other citizens of the same states with Joy, Humphreys, and Lindley, the latter could not properly remove the suit, so as to give this court jurisdiction to hear and determine the matter in dispute.   This view is sustained by recent decisions of Chief Justice FULLER in *Wilder* v. *Iron Co.*, 46 Fed. Rep. 682, where it is said:

"Any defendant, being such citizen of another state, may remove; but it is essential that a controversy should exist between such citizen of another state and citizens of the state in which the suit is brought.   Assuming that a single defendant, being a citizen of a state other than that in which the suit is brought, who is jointly sued with other defendants, citizens of the same state as the plaintiff, may remove the suit to the circuit court, upon making it appear to the court that, on account of prejudice or local influence, he cannot obtain justice in the state court or courts, still the question remains whether this can be done when the plaintiffs are not all citizens of the state in which the suit is brought, being all concerned adversely to the non-resident defendant, who seeks to remove the cause.   The language of the act of 1887 is that, ' when a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove,' etc.   The language of the act of 1867 in describing the suit is the same; and as to the act of 1867 it has been uniformly held that all the persons on one side must be citizens of the state in which the suit is brought, and all those on the other citizens of some other state. *Young* v. *Parker*, 132 U. S. 267, 10 Sup. Ct. Rep. 75, and cases cited.   Granted that the area of removability was enlarged by the act of 1887, inasmuch as any of the defendants may remove, still the rule under the act of 1867 applies, that, when the citizenship on the plaintiff's side of the suit is such as to prevent the removal under that act, it is equally effective to defeat the right under the act of 1887."

The decision of this court in *Thouron* v. *Railroad Co.*, 38 Fed. Rep. 673, is in substantial accord with the foregoing construction of the act of 1887.

On behalf of said defendants, it is urged that cross-petitioners are only defendants like themselves in the one suit between the Adelbert College, as plaintiff, on one side, and all other parties as defendants, within the rule applied in *Insurance Co.* v. *Huntington*, 117 U. S. 280, 6 Sup. Ct. Rep. 733, and *Iron Co.* v. *Ashburn*, 118 U. S. 54, 6 Sup. Ct. Rep. 929; and that any defendant or defendants, being a citizen or citizens of a state or states other than that of said plaintiff, has, under the existing act, the right to remove the suit, upon satisfying the court that from prejudice or local influence justice cannot be obtained in the state courts. Counsel for the remaining defendants cite and rely upon the decision of this court in *Whelan* v. *Railroad Co.*, 35 Fed. Rep. 863. In that case there was a single plaintiff citizen of Ohio, and the other a citizen of the state of Pennsylvania. The latter was allowed to remove the suit because of prejudice or local influence. There is no conflict between that case and the case of *Thouron* v. *Railroad Co.*, 38 Fed. Rep. 673, for in the latter there were one or more plaintiffs who were not citizens of the state in which the suit was brought, but were citizens of the same state with the removing defendants, and this was held to defeat the right of the latter to remove.

The question, then, on this branch of the case, is, how shall the cross-petitioners be regarded and placed? The plaintiff's original petition sought relief for itself, "concurrently and co-equally" with James Compton, who was made a party defendant in 1888. The cross-petition, filed by Redmond and others, introduced new parties, and changed the character of the original suit in that it was made a general bill or proceeding on behalf of all holders of equipment bonds. As the state court permitted this, it may be assumed to be in accordance with the local law, though it violated the well-settled rule of chancery practice and pleading, that a cross-bill should not introduce or make new parties. *Shields* v. *Barrow*, 17 How. 145; *Odom* v. *Owen*, 2 Baxt. 446; *McGavock* v. *Morrison*, 3 Tenn. Ch. 355. But, if not a proper cross-bill, it was, as to the new parties defendant and as to its purpose, an original bill or proceeding, presenting precisely the same matter of controversy involved in the plaintiff's petition. It is perfectly clear that the sole matter in dispute, both under the original and cross petition, is the question of the lien of said equipment bonds upon the properties which were of the Toledo & Wabash Railway Company, and to which defendants, as corporations and trustees, have succeeded as owners and holders of the title. On one side of that controversy are the plaintiff and all cross-petitioners, and on the other side are all the defendant corporations, the trustees under mortgages executed before and since the issuance of said equipment bonds, and the purchasing committee of the Wabash, St. Louis & Pacific Railway Company. There is a single controversy, with many parties severally interested, and jointly suing, on one side, and numerous defendants on the other. Under such circumstances, the cross-petitioners, in seeking for themselves and all other holders of equipment bonds

the same relief sought by plaintiff, should be regarded either as joint or co-plaintiffs with the Adelbert College, or as separate and independent plaintiffs in respect to defendants, against whom relief is sought. Occupying this position, there was no right of removal on the part of Joy, Humphreys, and Lindley, trustees, for two reasons: (1) Because all the parties plaintiff were not citizens of the state of Ohio, in which the suit was brought; and (2) because several of said plaintiffs were either aliens, or citizens of the same states with the removing defendants; and this court accordingly has no jurisdiction to hear and determine the controversy between the parties.

But, for another and additional reason, no jurisdiction has been acquired by this court. While the act of 1887 allows "any defendant," being a citizen of a state other than that in which the suit is brought, to remove, it is necessarily implied that such defendant is not a formal, but a necessary, party, having an interest, personal or representative, in the litigation, which may be injuriously affected by prejudice or local influence. The law gives no right of removal to parties having no such interest, or whose interest has terminated. The existence of such qualifying interest, and the jurisdiction of this court, depends, therefore, on the case as it stands between the parties at the time the application for removal is made. Now, what interest had Joy, Humphreys, and Lindley, as trustees under the mortgages of 1858 and 1879, or the bondholders, secured thereby, on December 3, 1890, when the application for removal was made and acted upon? The pleadings show that, under the foreclosure proceedings of the circuit courts for the proper districts of Ohio, Indiana, and Illinois, in the consolidated cause of *James R. Jesup et al.* v. *Wabash, St. Louis & Pacific Ry. Co.*, the mortgages held by said trustees, as well as all underlying divisional mortgages, including that of 1853 to the Farmers' Loan & Trust Company, was foreclosed; that the properties covered by said several mortgages were under, and in pursuance of, the decrees of said circuit courts, sold in May, 1889; that said sale was confirmed, and the title thereto vested in, and conveyed to, the purchaser, who conveyed the same to the newly-organized Wabash Railroad Company. Assuming, as we must, that those proceedings were valid, all the representative rights and interests of said trustees, James F. Joy, Solon Humphreys, and Daniel A. Lindley, who were before the court, and of the bondholders secured in and by the several mortgages to them, were thereby satisfied and extinguished, and the trusts created by the mortgages held by said removing defendants were fully executed. The Wabash Railroad Company has, under and by virtue of said foreclosure proceedings, succeeded to all the title, rights, and interests of said trustees, and of the bondholders whom they respectively represented; and, said Wabash Railroad Company having been made a party defendant to the state suit, and set up its title under said proceedings, whereby the controversy was shifted from the other defendants to itself before the application for removal was made, the defendants Joy, Humphreys, and Lindley, as trustees, had no such interest in the litigation as entitled them to remove the suit. If the supreme court of Ohio should refuse to

give proper effect to the title acquired by said Wabash Railroad Company under said foreclosure proceedings, it may sue out its writ of error to the supreme court of the United States. But whether said company succeeds or fails in holding the rights and interests which said trustees, Joy, Humphreys, and Lindley, and the bondholders represented by them, hold under their several mortgages, there is no recourse on or against said trustees or bondholders, such as would render them, or either of them, liable either to the plaintiff and cross-petitioners, or to said Wabash Railroad Company. From the time, therefore, that said Wabash Railroad Company succeeded to their rights, and was made a party defendant to the state suit, said trustees ceased to have any interest in the litigation, became merely formal parties, and had no right to remove the cause.

The conclusion of the court is that the suit must be remanded to the court of common pleas of Lucas county, Ohio, from whence it was removed, for want of jurisdiction in this court to hear and determine the controversy between the parties. This judgment the removing defendants may no doubt have reviewed by the supreme court, under the fifth section of the act of 1891. The cause will be remanded, and the removing parties be taxed with the costs connected with and incidental to the removal and remanding of the suit.