## BOATMEN'S BANK OF ST. LOUIS, MO., v. FRITZLEN et al.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1905.)

### No. 2,081.

1. REMOVAL OF CAUSES—WHEN JURISDICTION TRANSFERRED.

Whenever, upon the filing of a petition for removal, the record discloses a removable cause, the jurisdiction of the state court ceases, and that of the federal court vests.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 204–206.]

2. SAME—MOTIONS TO REMAND AND FOR REMOVAL DETERMINABLE BY PREPONDERANCE OF EVIDENCE, LAW, AND REASON.

Motions to remand and for removal should be decided, not by the existence of doubts, but by the preponderance of the facts, the law, and the reasons which condition them, in view of the fact that the right to invoke the jurisdiction of the federal court is a valuable and constitutional one; that an erroneous affirmance of a claim to this right may be corrected by the Supreme Court upon a certificate of the question of jurisdiction, while a mistaken denial of the claim is not reviewable, and an error that may be corrected is less grievous than one that is remediless.

3. JURISDICTION—COURT MAY ACT ON FRAUDULENT ATTEMPT TO EVADE, PATENT UPON RECORD.

Where the fact is patent upon the face of the pleadings and record in a suit that an improper party has been joined, or a sham cause of action has been injected into the case, for the sole purpose of defeating the jurisdiction of the federal court over the real controversy, pleading and evidence of that fact aliunde are not indispensable; and the court may find the attempted fraud upon its jurisdiction from the record alone, and prevent its perpetration.

4. FEDERAL COURT—JURISDICTION—INDISPENSABLE PARTIES ALONE TO BE CONSIDERED.

In the determination of the questions involving the jurisdiction of the federal court or the removal of causes, indispensable parties only should be considered, and all others should be disregarded.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 71, 79, 80.]

5. SAME—REMOVAL OF CAUSES—REARRANGEMENT OF PARTIES.

In determining questions of jurisdiction and removal, the positions assigned parties by the pleader are immaterial. It is the duty of the court to ascertain the real matter in dispute, and to arrange the parties on opposite sides of it according to the facts and their respective interests.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, §§ 71, 79, 80.]

6. PLEADING—GENERAL AVERMENTS LIMITED BY SPECIFIC AVERMENTS.

In pleading, a general averment is always limited and controlled by specific allegations upon the same subject.

7. FORECLOSURE OF MORTGAGES—PRIOR LIENHOLDER NOT NECESSARY PARTY.

The holder of a prior mortgage or lien is not a necessary party to the foreclosure of a junior mortgage, because he has no right to redeem to be foreclosed.

8. REMOVAL OF CAUSES—SEPARABLE CONTROVERSIES—WHAT ARE.

Separate and distinct causes of action disclosed by the bill or complaint in a single suit, upon either of which a separate suit could have been maintained, and the determination of neither of which is essential to the determination of the other, constitute separate controversies, within the meaning of section 2 of the Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [1 U. S. Comp. St. 1901, p. 509]; and

if either controversy, when the parties have been arranged upon opposite sides of it according to the facts and their respective interests, is wholly between citizens of different states, and can be fully determined as between them, the suit is removable.

[Ed. Note.—Separable controversy as ground for removal of cause to federal court, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Vecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

9. SAME—LOCAL INFLUENCE—RESIDENCE OF PLAINTIFF AND CO-DEFENDANTS IN SAME STATE NO BAR.

A defendant who is a citizen of a state other than that in which the suit is brought may remove it for prejudice and local influence, notwithstanding the fact that the plaintiff and some of the defendants are citizens of the state in which the action was commenced.

[Ed. Note.—Prejudice or local influence ground for removal of .cause to federal court, see note to P. Schwenk & Co. v. Strang, 8 C. C. A. 95.]

10. PRACTICE—JUDGES OF CO-ORDINATE JURISDICTION OVERRULING EACH OTHER'S DECISIONS.

The various judges who sit in the same court should not attempt to overrule the decisions of each other, especially upon questions involving rules of property and practice, except for the most cogent reasons.

11. PRACTICE—PRIOR ACTION IN STATE COURT CONSTITUTES NEITHER BAR NOR ABATEMENT.

The pendency in a state court of a prior action between the same parties which involves the same subject-matter as a subsequent action in the federal court presents no bar, and furnishes no ground for the abatement of the later action.

[Ed. Note.—Pendency of action in state court as ground for abatement of action in federal court, see note to Bunker Hill & Sullivan M. & C. Co. v. Shoshone Min. Co., 47 C. C. A. 205.]

12. SAME—CONFLICT OF DOMINION TO BE AVOIDED, BUT CASE TO PROCEED.

Wherever one of the courts secures by proper process the custody or dominion of specific property, which it is one of the objects of the suit in the other court to subject to its judgment or decree, the latter action should not be dismissed, but should proceed until the custody of the property is required, and should then be stayed until the proceedings in the court which has obtained the prior custody or dominion are concluded, or ample time for their termination has elapsed.

[Ed. Note.—Conflict of jurisdiction between state and federal courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

13. CONFLICT OF JURISDICTION—POSSESSION MAY BE RETAINED UNTIL COURT ENTITLED REQUESTS.

A court which has the actual custody and possession of property to which another court of concurrent jurisdiction has prior and superior right may lawfully retain the property until the latter court, through its proper officer, requests and offers to receive the actual possession and custody.

14. COURTS OF CONCURRENT JURISDICTION—FIRST JUDGMENT RENDERS ISSUES RES ADJUDICATA.

Where suits are pending between the same parties, which involve the same issues, in two courts of concurrent jurisdiction, it is the first final judgment, although it may be rendered in the second suit, which renders the issues res adjudicata in the other court.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Kansas.

For opinion below, see 128 Fed. 608.

On October 9, 1903, the Boatmen's Bank of St. Louis, Mo., a corporation of the state of Missouri, brought an action of replevin in the United States

Circuit Court for the District of Kansas against D. G. Fritzlen, Edna P. Fritzlen, his wife, and W. H. Weldon, residents and citizens of the state of Kansas, to recover the possession of certain cattle and other personal property; and on October 16, 1903, the marshal took this property from the defendant D. G. Fritzlen, and delivered it to the plaintiff, pursuant to the command of a writ of that court which had been issued to him. The defendants answered, and thereafter, upon motion of D. G. Fritzlen and Edna P. Fritzlen, the court, on April 25, 1904, rendered a judgment of dismissal, and directed the property and its proceeds returned, on the ground that at the commencement of the action the district court of Clark county, in the state of Kansas, had exclusive jurisdiction over the subject-matter of the action. This writ of error has been sued out to reverse this judgment. It was rendered upon this state of facts: On November 30, 1901, the defendant D. G. Fritzlen gave a note for $32,920.15, and secured it by a mortgage upon the personal property in controversy. The Boatmen's Bank held this note and mortgage. Some time in July, 1903, after this note had become past due, D. G. Fritzlen gave a note for $3,750, and a mortgage on this property to secure it, to W. H. Weldon; and on July 23, 1903, Weldon commenced a suit in the district court of Clark county against D. G. Fritzlen, Edna P. Fritzlen, and the Boatmen's Bank, to set aside and avoid the mortgage of the bank, to enjoin it from taking or interfering with the property, and to foreclose the mortgage for $3,750 upon it, and another mortgage made by Fritzlen and his wife upon a large amount of real estate to secure the same debt. On July 30, 1903, the probate judge of Clark county issued an order which restrained the defendants in that suit from interfering with or removing the personal property. On August 13, 1903, the Boatmen's Bank filed in the district court of Clark county a petition and bond for a removal of the suit on the grounds of a separable controversy, of local prejudice, and that the suit, in its entirety, was one in which the Boatmen's Bank was upon the one side, while Weldon and D. G. Fritzlen and Edna P. Fritzlen were upon the other side. On September 14, 1903, this petition for removal was filed in the United States Circuit Court for the District of Kansas, and on the same day the defendants Weldon, D. G. Fritzlen, and Edna P. Fritzlen made a motion to remand the suit to the state court, and the Boatmen's Bank made a motion to dissolve the restraining order. The court (Judge Lochren presiding) denied the motions to remand, and granted the motion to dissolve the restraining order. Thereupon the action in replevin here under consideration was commenced, and the mortgaged personal property was seized therein, and delivered to the bank, under a writ issued by the Circuit Court to the marshal, and the action proceeded to its dismissal. Meanwhile, on January 12, 1904, D. G. Fritzlen and Edna P. Fritzlen filed a plea to the jurisdiction in the suit of Weldon against the Fritzlens and the bank, by which they presented the same questions which were raised on their motion to remand. A replication to this plea was filed, and the court, in which then and thereafter Judge Lochren was not presiding, ordered that the issue which involved local influence should stand for hearing as though an answer denying the sufficiency of that plea had been interposed. On April 2, 1904, the court sustained the plea to the jurisdiction, and ordered the suit remanded to the state court.

James S. Botsford (B. F. Deatherage and O. G. Young, on the brief), for plaintiff in error.

D. R. Hite, for defendants in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The personal property which is the subject of this controversy was taken into the actual custody of the Circuit Court of the United States in the action of replevin by seizure under its writ of October 16, 1903.

That seizure was lawful, and the jurisdiction of that court over the property complete, unless the district court of Clark county then had plenary and exclusive dominion of the property in the Weldon suit. The suit which Weldon brought had then been removed from the court of Clark county, where it was commenced in July, 1903, to the Circuit Court, the motion to remand it had been heard and denied, and the restraining order which had been issued in it had been dissolved.

When a petition for removal and the bond required by the act of Congress are filed, and the record on its face shows the right of the petitioner to a removal, the jurisdiction of the state court ceases, and that of the federal court attaches. Railroad Co. v. Mississippi, 102 U. S. 135, 141, 26 L. Ed. 96; Railroad Co. v. Koontz, 104 U. S. 5, 14, 26 L. Ed. 643; Steamship Co. v. Tugman, 106 U. S. 118, 122, 27 L. Ed. 87; Stone v. South Carolina, 117 U. S. 430, 432, 6 Sup. Ct. 799, 29 L. Ed. 962.

If issues of fact arise upon the averments of the petition for removal, the jurisdiction to try them is in the federal court, and not in the state court. Stone v. South Carolina, 117 U. S. 430, 432, 6 Sup. Ct. 799, 29 L. Ed. 962; Carson v. Hyatt, 118 U. S. 279, 281, 6 Sup. Ct. 1050, 30 L. Ed. 167; Crehore v. Ohio, &c., Ry. Co., 131 U. S. 240, 243, 244, 9 Sup. Ct. 692, 33 L. Ed. 144.

If then, the record in the Weldon suit at the time the writ of replevin was run disclosed upon its face a case which the bank had the right to remove to the federal court, the state court was without jurisdiction of the property replevied when it was seized by the marshal, and the action of replevin should have been tried and adjudged upon its merits. The first question for consideration, therefore, is whether or not the action of the Circuit Court in September, 1903, in taking jurisdiction of the suit which Weldon brought, and in refusing to remand that action to the state court, was right.

The suggestion presents itself here that this question should be considered in the light of the statements found in Kessinger v. Vannatta (C. C.) 27 Fed. 890, and Fitzgerald v. Missouri Pacific Ry. Co. (C. C.) 45 Fed. 812, 821, to the effect that, if there is doubt of the jurisdiction of a federal court when a motion to remand or a motion for removal is presented, the claim of jurisdiction should be denied. The remarks in these opinions, however, do not, after a thoughtful consideration of the subject, commend themselves to our judgment as a statement of the true rule that ought to govern the determination of such issues under the acts of Congress now in force. By the last paragraph of section 5 of the act of March 3, 1875, c. 137, 18 Stat. 472, 1 U. S. Comp. St. 1901, p. 511, every order of a Circuit Court which dismissed or remanded a cause was made reviewable by the Supreme Court by writ of error or appeal. This right to review a remanding order was withdrawn by section 6 and the last paragraph of section 2 of the act of March 3, 1887, c. 373, 24 Stat. 552, 553, as re-enacted for the purpose of correcting the enrollment by the act of August 13, 1888, c. 866, 25 Stat. 433, 435, 1 U. S. Comp. St. 1901, p. 510; and a party who is deprived of his right to the trial of a controversy in the federal court by an erroneous order which remands it to a court of a state is now left without remedy. Missouri Pac. Ry. Co. v. Fitzgerald, 160 U. S.

556, 581, 582, 16 Sup. Ct. 389, 40 L. Ed. 536. On the other hand if the federal court erroneously denies the motion to remand, or grants the petition to remove and retains jurisdiction, the aggrieved party has an efficient remedy by a writ of error from, or an appeal to, the Supreme Court, and a certificate of the question of jurisdiction by the Circuit Court, upon the entry of the final judgment, under Act March 3, 1891, c. 517, § 5, 26 Stat. 827, 1 U. S. Comp. St. 1901, p. 549, 160 U. S. 582, 16 Sup. Ct. 396, 40 L. Ed. 542.

The remarks of the Circuit Judge in Fitzgerald v. Missouri Pac. Ry. Co. (C. C.) 45 Fed. 812, 819, 820, 821, to the effect that all doubts should be resolved against the jurisdiction of the national courts, were not made in the course of the discussion or decision of any question before him for determination, because there were no doubts in that case. The opinion of the District Judge in Kessinger v. Vannatta (C. C.) 27 Fed. 890, to a like effect, was based on the act of 1875; and one of the reasons for his conclusion was that, if he sustained the motion to remand, his order would be a final adjudication, which could be immediately reviewed by the Supreme Court, while the review of an order denying the motion would be delayed until after a trial and final judgment. The same argument would now lead logically to the conclusion that doubts should be resolved by retaining the jurisdiction, since orders refusing to remand and directing removals are now reviewable upon certificate of the question of jurisdiction to the Supreme Court, while orders renouncing or denying jurisdiction are not subject to review at any time or in any way.

The contention in these opinions that jurisdiction should be denied where any doubt arises, because the jurisdiction of the state court is always unquestionable, while that of the federal court may be subsequently successfully challenged, loses much of its force when the fact is considered that the erroneous retention by a state court of jurisdiction over a removable cause is reversible by the Supreme Court after the expense and delay of a trial in the court of first instance, and a hearing and judgment in the Supreme Court of the state. Stone v. South Carolina, 117 U. S. 430, 431, 6 Sup. Ct. 430, 29 L. Ed. 962. The question under consideration, however, is conditioned, and it should be determined by graver considerations and better reasons.

For purposes deemed wise by the founders and conservers of this nation, the Constitution and the acts of Congress have granted to its citizens the right to the hearing, the trial, and the independent judgment of the courts of the United States upon certain controversies which arise between citizens of different states, and have intrusted to these courts the protection and preservation of that right. No sound reason occurs why those whose oaths and duty require them to enforce this Constitution and these laws, and to sustain and give effect to this valuable and important right, should resolve every doubt against the enforcement of the Constitution and the acts of Congress, and against the protection and exercise of the right.

Experience, observation, the thoughtful consideration of the subject through many generations of men by publicists and statesmen, have produced a consensus of opinion throughout the civilized world that the final decision of grave issues should not be left to the court or judge

who first hears or tries them, however learned, able, wise, and impartial he may be, but that those disappointed in the first decision should be permitted to invoke the judgment of other unprejudiced minds upon the righteousness of the conclusion. The elaborate system of appellate courts maintained in this and other nations is a demonstration of the existence and the prevalence of this opinion.

Every conscientious judge, every thoughtful man, upon whom is laid the grave responsibility and the heavy burden of determining the rights of his fellows, rejoices in the thought, wherever such is the case, that his decision may be reviewed, and that, if erroneous, it will not work irreparable injustice to him whom he deems it his duty to defeat. When a case has been removed from a state to a federal court, and a motion to remand it is made, or when a motion to remove it is presented in the first instance to the federal court, the petitioner either has or he has not the right to the trial and decision of his controversy in that court. That right is of sufficient value and gravity to be guarantied by the Constitution and the acts of Congress. If it exists, and the Circuit Court denies its existence, and remands or refuses to remove the suit, the error is remediless, and it deprives the petitioner of his constitutional right. If the right does not exist, and the court affirms its existence and retains the suit, the error may be corrected by the Supreme Court. An error that the aggrieved party may correct is less grievous than one that is without remedy. And the true rule is that motions to remand and for removal should be decided, not by the existence of doubts, but by the preponderance of the facts, the law, and the reasons which condition them, in view of the fact that the right to invoke the jurisdiction of the federal court is a valuable constitutional right, and an erroneous affirmance of the claim to that right may be corrected by the Supreme Court upon a certificate of the question of jurisdiction, while an erroneous denial of the claim is remediless.

A striking illustration of the wisdom of this rule may be found in the history of the case of Union Terminal Ry. Co. v. Chicago, B. & Q. R. Co. (C. C.) 119 Fed. 209. That suit was commenced in the state court; was removed to the United States Circuit Court for the Western District of Missouri, where a motion to remand was heard and decided by Thayer, Circuit Judge, and Philips, District Judge. The grave and doubtful questions which the motion presented are disclosed by the opinion of the learned District Judge. The motion was denied. The decision subsequently received the approval of a majority of the Supreme Court in Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462. If the Circuit Court had denied its jurisdiction and remanded this case to the state court, it would have deprived the petitioner of its right, and left it without power to regain it. We turn to the consideration of the question whether or not the Weldon suit was removable to the federal court.

The petition for removal set forth the residence and citizenship of the parties, that the mortgaged property was worth $30,000, and that the bank was entitled to the removal of the suit because there was a separable controversy, because there was prejudice and local influence, and because the only matter in dispute was such that, when

the parties were rearranged according to their respective interests, all those upon one side of the real issue were citizens of Kansas, and the only party upon the other side was a citizen of Missouri. The petition was verified, and it stated facts sufficient to present a prima facie case of prejudice and local influence, under the act of Congress. The record disclosed these further facts: The complainant, Weldon, had alleged in his bill that on July 2, 1903, the defendants D. G. Fritzlen and Edna P. Fritzlen had made their note to him for $3,750, payable July 12, 1903, and had secured it by their mortgages on the real and personal property; and Weldon had prayed for judgment against them for the amount of his note, that his mortgages be declared to be a first lien upon all the property, and that so much as might be necessary should be sold to pay his judgment and the costs of the suit. He had also averred in his bill that the Boatmen's Bank claimed to have an interest in the property by virtue of certain mortgages thereon, but that the bank had "no right, title, or interest in or to any of said property, real or personal"; that whatever interest it claimed to have grew "out of certain transactions entered into between said bank and a certain partnership known as Elmore & Cooper, which said transactions, in so far as they relate to said mortgage liens, this plaintiff alleges to be wholly illegal and void; * * * that the mortgages which the said Boatmen's Bank asserts are void, illegal, and of no effect"; that if the bank had any claim, right, title, or interest in any of the property, it was junior and inferior to the liens of the plaintiff; that the bank was about to take possession of the personal property by virtue of its "illegal and void mortgages," and to convert it to its own use, to the irreparable injury of the plaintiff; and, in view of these averments, the complainant prayed "that the pretended claim, lien, and interest of the said defendant Boatmen's Bank be declared to be illegal and void," and for further relief. The complainant, Weldon, had also filed an application for a temporary injunction, verified by his oath, in which he had stated that "the Boatmen's Bank, defendant herein, claims the legal title and right of possession of all of said personal property by virtue of certain chattel mortgages which it is alleged by said Boatmen's Bank constitute liens upon said personal property; that said chattel mortgages are illegal and void, and the consideration therefor is illegal and void, and said chattel mortgages do not constitute any lien upon said personal property."

This was the record in the Weldon suit when the petition for removal was filed, and the Circuit Court (Judge Lochren presiding) held that, upon the pleadings and upon the face of this record, this suit was a controversy between the plaintiff and the defendants D. G. Fritzlen and Edna P. Fritzlen, who were citizens of Kansas, upon the one side, and the defendant the Boatmen's Bank, which was a citizen of the state of Missouri, upon the other side, and that the bank had the right to remove it. That court held, in effect, that the alleged cause of action to foreclose the Weldon mortgage was nothing but a fraudulent device to evade the jurisdiction of the federal court, that the pretense that there was any dispute over the foreclosure of the Weldon mortgage between Weldon and the Fritzlens was without basis of fact

to support it, and that the only matter in dispute in the entire suit was the validity of the mortgages of the bank—a controversy in which Weldon and the Fritzlens were upon the one side, and the bank upon the other.

Justice is proverbially blind, but a court cannot, and ought not to, fail to see the patent facts which a record discloses, or to perceive the unavoidable deduction it compels; and, where the only rational inference from the pleadings and the record is that an improper party or a sham cause of action has been injected into a suit for the sole purpose of defeating the jurisdiction of the federal court over the real controversy, pleading and evidence to that effect aliunde are neither indispensable nor necessary, and the Constitution and the acts of Congress vest in the court the power, and impose upon it the duty, to find from the record alone the attempted fraud, and to prevent its perpetration.

Did not this record sustain the finding of Judge Lochren? The mortgages of the bank were made in November, 1901. They were past due. They secured an indebtedness of $32,920.15. The mortgaged property was worth $30,000. The personal property was of more value than $10,000. All this property was in the possession of the Fritzlens. On July 2, 1903, they mortgaged this property to secure the payment of $3,750 in ten days. On July 23, 1903, 11 days after the mortgages became due, and only 21 days after they were made, suit was brought to foreclose them, not against the holders of the right to redeem alone, but also against the bank, the holder of prior mortgages and an unnecessary party to the foreclosure, and Weldon applied for an injunction to restrain the bank from collecting its debt. Weldon and Fritzlen were residents of the same county. They did not make these mortgages to extend the pressed debtor's time to pay the $3,750, for they made them due in 10 days from their dates. They did not execute them to secure or to pay Weldon the $3,750, for, if this had been their purpose, it could and would have been more speedily accomplished by an immediate conveyance or delivery by the Fritzlens of some or all of the property in their possession, subject to the mortgages to the bank, without the delay or the expense of mortgages or foreclosure.

Men are presumed to intend the natural or inevitable consequences of their acts. They are presumed to have a rational purpose in their doings. What could have been the intention and purpose of Weldon and of the Fritzlens in making the mortgages to the former, and causing him to immediately bring the suit to foreclose them? Why have mortgages and foreclosures, and their inevitable expenses and delays through months or years of time, when a conveyance or delivery of a part or all of the debtors' property to Weldon would, without delay or expense, accomplish instanter every effect as security or payment of the mortgages and their foreclosure? These questions are susceptible of but one answer, and there is no other rational deduction. It is that the mortgages to Weldon, and the suit to foreclose them, were the parts of a deliberate scheme devised by the Fritzlens and Weldon for the sole purpose of depriving the bank of its right, under the Constitution and the acts of Congress, to the hearing and decision in the federal courts of the controversy between it and them over the validity

of its mortgages; that there was in fact no issue between Weldon and the Fritzlens over the foreclosure of the mortgages to him; and that the only controversy in the Weldon suit was that over the validity of the mortgages to the bank. These were the conclusions of Judge Lochren upon the motion to remand, and they were not without strong support upon the record before him.

If, however, the concession is made that there was a bona fide suit to foreclose the mortgages to Weldon, and a real controversy between him and the Fritzlens over that foreclosure, does not this bill disclose two controversies and two causes of action—one between the Fritzlens and Weldon, which involved the foreclosure of his mortgages, and another between the Fritzlens and Weldon, on one side, and the bank, upon the other,· which involved the validity of the mortgages to the bank, and the avoidance of them for fraud, as clouds upon the title to the property? In a determination of the jurisdiction of the national courts, and the right to remove causes of action to them, indispensable parties only should be considered, because all other parties may be dismissed and disregarded if their presence would oust or restrict the jurisdiction or the right. Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Bacon v. Rives, 106 U. S. 99, 104, 1 Sup. Ct. 3, 27 L. Ed. 69; Wormley v. Wormley, 8 Wheat. 421, *451, 5 L. Ed. 651; Wood v. Davis, 18 How. 467, 475, 15 L. Ed. 460; Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 Fed. 124, 126, 27 C. C. A. 73, 75.

The positions assigned to parties in a suit by the pleader are immaterial in determining the removability of a cause. It is the duty of the national court to ascertain the real matter in dispute, to arrange the parties on opposite sides of it according to the facts and their respective interests, and then to determine whether or not a controversy exists between citizens of different states which invokes the jurisdiction of that court. Removal Cases, 100 U. S. 457, 460, 25 L. Ed. 593; Pacific Ry. Co. v. Ketchum, 101 U. S. 289, 298, 25 L. Ed. 932; Harter v. Kernochan, 103 U. S. 562, 566, 567, 26 L. Ed. 411; Evers v. Watson, 156 U. S. 527, 532, 15 Sup. Ct. 430, 39 L. Ed. 520; Black's Dillon on Removal of Causes, § 90.

In a controversy between a junior incumbrancer and a senior mortgagee, in which the latter and the mortgagor are made defendants, the facts and the interest of the mortgagor place him on the side of the dispute occupied by the junior incumbrancer. Removal Cases, 100 U. S. 469, 25 L. Ed. 593.

The controversy between Weldon and the bank was not concerning the priority or superiority of their respective liens, but over the validity of the mortgages of the bank, and their avoidance for fraud. The bill was filled with averments of fraud and illegality which conditioned the mortgages and the lien which they evidence, and the only prayer which it contained regarding them was that the pretended lien, claim, and interest founded in them "be declared illegal and void."

It is true that after the complainant had averred that the mortgages were fraudulent and void, and had set forth the transactions which he alleged made them of that character, he also averred that,

if the bank had any claim or interest in the property, it was junior, inferior, and subordinate to the lien of his mortgages. If this had been the only averment concerning the claim of the bank, and if it had not been known by the pleader to be false when he made it, it might have formed the basis of an issue material to the suit for the foreclosure of his mortgage. But in view of the entire bill; of the specific allegations of the fraud, illegality, and invalidity of the mortgages; and of the specific prayer it contains that the claim, lien, and interest of the bank "be declared illegal and void"; that the complainant's mortgage be foreclosed; that so much only of the property be sold as should be necessary to pay the debt of the complainant; and in view of the entire absence of any prayer that the property be sold free of incumbrances, or that the proceeds be applied to the payment of the liens in their order—the only fair and logical construction of the pleading is that the only issue it tendered concerning the mortgages of the bank was that of their validity, just as the only relief it sought concerning them was a decree that they were void for fraud, and that the allegation that the claim and interest of the bank, if any, was junior and subordinate to that of the plaintiff, was but a general statement of the controversy presented by the specific averments of fraud and invalidity which preceded it, and hence that it presented no other question. In pleading, a general averment is always controlled and limited by specific allegations regarding the same subject-matter. Mayer v. Ft. Wayne, C. & L. R. Co. (Ind. Sup.) 31 N. E. 567, 568; Reynolds v. Copeland, 71 Ind. 422; Pinney v. Fridley, 9 Minn. 34 (Gil. 23); 4 Enc. of Pl. & Prac. 742. If the averment was more than this, and if it was intended to present the distinct issue whether or not the liens evidenced by the mortgages of the bank were prior in time to those of the plaintiff, it was false and sham, to the knowledge of the pleader, and could have been interposed for no other purpose than that of defeating the jurisdiction of the federal court; and, for the reasons heretofore stated, it cannot be permitted to have that effect. Kelly v. Chicago & A. R. Co. (C. C.) 122 Fed. 286; Gustafson v. Chicago, R. I. & P. Ry. Co. (C. C.) 128 Fed. 85; Union Terminal Ry. Co. v. Chicago, B. & Q. Ry. Co. (C. C.) 119 Fed. 209. For these reasons, the averment of the juniority and subordination of the bank's liens was, in our opinion, restricted to the issue of the invalidity of its mortgages, and it will not be further noticed.

Returning to the analysis of the bill, and the consideration of the number of controversies and causes of action it sets forth, in the light of the rules of law to which reference has been made, it clearly disclosed a controversy and cause of action regarding the foreclosure of the mortgages to Weldon, and another controversy and cause of action concerning the invalidity and avoidance of the mortgages of the bank for fraud. To the former cause of action the bank was not a necessary party. The purpose of the foreclosure of a mortgage is to bar the equity of redemption; to put a limit to the rights of those who are entitled to redeem from it. The holder of a senior mortgage is never a necessary party to such a suit, because he has no right to redeem. Jerome v. McCarter, 94 U. S. 734, 736, 24 L. Ed.

136; Jones on Mortgages, § 1439; Woodworth v. Blair, 112 U. S. 8, 5 Sup. Ct. 6, 28 L. Ed. 615; Hagan v. Walker, 14 How. 29, 37, 14 L. Ed. 312; Carey v. Railway Co., 161 U. S. 115, 132, 16 Sup. Ct. 537, 40 L. Ed. 638; Peters v. Bowman, 98 U. S. 56, 25 L. Ed. 91; Rose v. Page, 2 Sim. 471; Richards v. Cooper, 2 Beav. 304; Delabere v. Norwood, 3 Swanst. 144. The proposition is conceded that in exceptional cases a junior mortgagee may maintain a bill against the owner of the property, and both prior and subsequent incumbrancers, to marshal the liens, to sell the mortgaged property free from all incumbrances, and to distribute the proceeds to the lien-holders in the order of their superiority. But such a suit is based on an administration bill. In reality it contains two causes of action—one to foreclose the junior mortgage, and another to redeem from the prior incumbrances. Hefner v. Northwestern Life Ins. Co., 123 U. S. 747, 754, 8 Sup. Ct. 337, 31 L. Ed. 309. Suffice it to say that the bill which Weldon exhibited contains no element of a bill to redeem, or of a bill to marshal liens or to sell the property free from incumbrances, or to distribute its proceeds to lienholders in the order of their rights. It not only contains no averments to warrant and no prayers for such relief, but it contains an express prayer that only so much of the mortgaged property as shall be necessary to pay the debt to the complainant shall be sold—a petition utterly inconsistent with the theory of an administration bill, or of a bill to sell the property free from incumbrances to discharge liens in their order. It follows that the bank was not an indispensable party to the controversy or cause of action for foreclosure which the bill presents, and that the only parties interested in that controversy or cause of action were Weldon and the Fritzlens.

The other and the main controversy and cause of action presented by the bill involved the avoidance of the mortgages of the bank for fraud. The facts and the respective interests of the parties arranged the bank, a citizen of Missouri, on one side, and Weldon and the Fritzlens, citizens of the state of Kansas, on the other side, of this controversy, because it was the interest of the bank to sustain, and that of Weldon and the Fritzlens to avoid, the mortgages. The suit to enforce this cause of action was one of which the Circuit Court for the District of Kansas had original cognizance, because it consisted of a controversy between citizens of different states which involved the requisite amount. 1 U. S. Comp. St. 1901, p. 508; Act March 3, 1875, c. 137, § 1, 18 Stat. 470; Act March 3, 1887, c. 373, § 1, 24 Stat. 552; Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433. The second section of the acts of 1887 and 1888 provides that when, in any such suit, "there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district." 1 U. S. Comp. St. 1901, p. 509, § 2. Why was not this controversy between the bank and Weldon and the Fritzlens separable, and the suit removable? The answer to this question which counsel make is that this controversy was but an incident and a part of the cause of action to

foreclose the mortgage to Weldon, and hence that it was inseparable from the suit for that cause. In support of this contention, our attention has been called to the following authorities: Graves v. Corbin, 132 U. S. 571, 10 Sup. Ct. 196, 33 L. Ed. 462; Fidelity Ins. Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898; Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528; Thurber v. Miller, 67 Fed. 371, 14 C. C. A. 432; Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63; Thompson v. Dixon (C. C.) 28 Fed. 5; Ayers v. Chicago, 101 U. S. 184, 25 L. Ed. 838; Barth v. Coler, 60 Fed. 466, 469, 9 C. C. A. 81, 83; Wilson v. Oswego Township, 151 U. S. 56, 65, 14 Sup. Ct. 259, 38 L. Ed. 70; Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121; Little v. Giles, 118 U. S. 596, 601, 7 Sup. Ct. 32, 30 L. Ed. 269. The suit by Weldon was not founded upon an administration bill. It did not seek the sale of the entire property free of incumbrances, and the distribution of its proceeds to all parties interested according to their rights. In a suit founded on such a bill, every lienholder, senior or junior, and every person interested in the property, is a necessary party to the accomplishment of the main purpose of the suit, and the controversies between the complainant and the lienholders and claimants are inseparable parts of the main and single cause of action he presents. The first three cases cited above were of this nature. In Graves v. Corbin, 132 U. S. 571, 581, 10 Sup. Ct. 196, 32 L. Ed. 462, a simple contract creditor exhibited a bill against all the lienholders, claimants to the property of an insolvent limited partnership, to avoid all the alleged liens upon it, to sell the property free from all incumbrances, and to distribute the proceeds pro rata among all the creditors upon the theory that the property constituted a trust fund for the payment of all the creditors, share and share alike. The court logically held that a controversy between the complainant and the First National Bank, which claimed a lien upon this property, was an inseparable part of the complainant's single cause of action. In Fidelity Ins. Co. v. Huntington, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898, a judgment creditor filed a bill against the owners of, and those holding liens upon, the property of his debtor, to sell it free from the liens, to marshal the latter, to pay those who held liens prior to his judgment out of the proceeds of the property, and to apply the remainder, first, to the payment of his judgment; and, second, to the payment of subsequent liens. Upon the same principle the court held that controversies which arose in the suit between the complainant and the lienholders were but a part of his indivisible cause of action. Torrence v. Shedd, 144 U. S. 527, 12 Sup. Ct. 726, 36 L. Ed. 528, presents another bill to administer the estate it describes. That was a suit for partition, and the court held that a controversy which arose in the suit between two or more of the parties relative to an undivided share of the property was a part of the complainant's cause of action for a division and distribution of the entire property. The decisions in these three cases fail to rule the case under consideration, because the bill does not seek a sale of the property free from incumbrances, and a distribution of the proceeds according to the rights of

the parties, but, on the other hand, presents two distinct causes of action—one to avoid prior mortgages for fraud, and the other to sell only such part of the property as may be necessary to pay the debt of the complainant.

Nor do the cases of Thurber v. Miller, 67 Fed. 371, 14 C. C. A. 432, Thompson v. Dixon (C. C.) 28 Fed. 5, and Ayers v. Chicago, 101 U. S. 184, 25 L. Ed. 838, reach the question which this case presents. In Thurber v. Miller, to the averment in a bill for a foreclosure that certain defendants had or claimed some lien or interest in the mortgaged premises, which, if any, had accrued subsequent to the lien of the mortgage, one of the defendants answered that he was the beneficiary in a mortgage which was prior to that of the complainant, and this court held that the controversy over the priority of the two mortgages was not separable from that involved in the foreclosure of the mortgage of the complainant. Thompson v. Dixon and Ayers v. Chicago involve analogous questions, less similar to that presented in the case at bar. The sound reason for the decision in Thurber v. Miller and in these cases is that the purpose of a foreclosure is to limit the right of owners and junior incumbrancers to redeem. An ascertainment and adjudication of the question who are junior incumbrancers, and who have the right to redeem, are indispensable to the foreclosure of that right. Hence a controversy which arises in the foreclosure suit over the priority of a lien of a defendant over that of the complainant is an essential part of the latter's cause of action, and inseparable from it. This, however, is not true of a controversy which involves the avoidance for fraud of mortgages which are prior to that which a complainant seeks to foreclose. The holder of such mortgages has no right to redeem, no equity to be foreclosed; and the determination of the validity of his mortgages constitutes no part of the suit to foreclose the junior mortgage, and is neither essential nor material to its purpose.

The other cases in support of the view of the appellees have no special relevancy to the issue before us. They but illustrate the familiar rules that suits for joint fraud or for joint trespass (Barth v. Coler, 60 Fed. 466, 469, 9 C. C. A. 81, 83; Little v. Giles, 118 U. S. 596, 601, 7 Sup. Ct. 32, 30 L. Ed. 269), for joint negligence (Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 21 Sup. Ct. 67, 45 L. Ed. 121), or for the breach of a joint contract (Railroad Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63), may not, by the denial of joint liability by the defendants, and by the presentation of separate defenses, be resolved into separable controversies, because the plaintiff may select and state his cause of action as he chooses in his pleadings, and it is not competent for the defendants, by interposing separate defenses, to make a controversy separable which the pleadings of the plaintiff show to be joint. No question of that nature is presented in the Weldon suit, and we return to the consideration of the controversies it discloses.

In Barney v. Latham, 103 U. S. 205, 214, 26 L. Ed. 514, the complainants brought a bill against certain individuals and a corporation. The charge of the bill was that the complainants were, in equity, the owners of $1/37$ of certain lands earned by the construction of a railroad;

that the individuals had sold some of these lands, and received proceeds therefrom to the amount of $129,500, $1/37$ of which belonged to the complainants; and that these individual defendants had caused the title to the remainder of the lands to be vested in the corporation. The complainants sought to recover from the individual defendants $1/37$ of the proceeds of the lands they had sold, and from the corporation $1/37$ of the lands it had received. The Supreme Court decided that the controversy between the complainants and the individual defendants, notwithstanding the fact that they were the stockholders of the corporation, was separable from that between the complainants and the corporation, and said:

"With that controversy the land company, as a corporation, has no necessary connection. It can be fully determined, as between the parties actually interested in it, without the presence of that company as a party in the cause. Had the present suit sought no other relief than such a decree, it could not be pretended that the corporation would have been a necessary or indispensable party to that issue. Such a controversy does not cease to be one wholly between the plaintiffs and those defendants because the former, for their own convenience, choose to embody in their complaint a distinct controversy between themselves and the land company."

Blake v. McKim, 103 U. S. 336, 338, 25 L. Ed. 563; Hyde v. Ruble, 104 U. S. 407, 409, 26 L. Ed. 823.

Separate and distinct causes of action disclosed by the record in a single suit, upon either of which a separate suit could have been maintained, and the determination of neither of which is essential to the disposition of the other, constitute separate controversies, within the meaning of the acts of Congress. Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122; Gudger v. Western N. C. R. Co. (C. C.) 21 Fed. 81; Boyd v. Gill (C. C.) 19 Fed. 145, 149; Black's Dillon on Removal of Causes, § 143. In Geer v. Mathieson Alkali Works, supra, the Supreme Court declares the rule upon this question in these words:

"A suit may, consistently with the rules of pleading, embrace several distinct controversies. Barney v. Latham, 103 U. S. 205, 212, 26 L. Ed. 514. It was said in Hyde v. Ruble, 104 U. S. 409, 26 L. Ed. 824: 'To entitle a party to a removal under this clause [second clause of section 2 of the act of 1875, same as second clause in the act of 1887], there must exist in the suit a separate and distinct cause of action, in respect to which all the necessary parties on one side are citizens of different states from those on the other.' In other words, as expressed in Fraser v Jennison, 106 U. S. 191, 194, 1 Sup. Ct. 171, 27 L. Ed. 131, 'the case must be one capable of separation into parts, so that in one of the parts a controversy will be presented with citizens of one or more states on one side, and citizens of other states on the other, which can be fully determined without the presence of any of the other parties to the suit as it has been begun.' And when two or more causes of action are united in one suit, there can be a removal of the whole suit on the petition of one or more of the plaintiffs or defendants (now only the defendants) interested in the controversy, which, if it had been sued on alone, would be removable."

The Weldon suit fulfilled every requirement of this rule. Two causes of action were united in the same suit—one, to avoid prior mortgages for fraud; the other, to foreclose the junior mortgage. Neither was an essential part of the other, and the determination of neither was essential to the adjudication of the other. The cause of action to avoid

the prior mortgages for fraud presents a controversy, when the parties are lawfully placed according to the facts and their respective interests, wholly between citizens of one state upon one side, and a citizen of another state upon the other side, of it, which can be fully determined as between them. If a suit had been brought upon that cause of action alone, that suit would have been removable to the federal court. One of the defendants in that suit that is actually interested in the controversy which this cause of action presents petitioned for its removal to the federal court. The unavoidable conclusion is that the bill and the record which Weldon had made when the petition for removal was filed disclosed a separable controversy in his suit, wholly between citizens of different states, which could be fully determined as between them; that that suit was removable to the federal court; and that Judge Lochren rightly took jurisdiction of it and denied the motion to remand it.

There is another reason why Weldon was not entitled to a remand of his suit. It is that the bank had by its verified petition made a prima facie case of prejudice and local influence, which, although challenged by the defendant, had not been tried and determined by the court. The facts that the codefendants of the bank were citizens of the same state with the complainant, and that two of the District Judges have argued with marked force and ability, and have decided, that no case is removable under the fourth (the local influence) clause of the second section of the act of 1887 unless all the defendants are citizens of other states than that of the plaintiff (Anderson v. Bowers [C. C.] 43 Fed. 321; Campbell v. Milliken [C. C.] 119 Fed. 981, 985), have not been overlooked. There are, however, some suits which are removable under this section which are not originally cognizable in the federal courts —suits in which some of the defendants may be citizens of the same state as the plaintiff—notably those in which there is a separable controversy between citizens of different states. It is therefore not improbable that the same construction may apply to this paragraph of the section.

Prior to the passage of the act of 1887, suits involving controversies between citizens of different states were removable for prejudice or local influence by either "plaintiff or defendant" (Rev. St. § 639); and the removal could be had only where all the parties to the suit on one side were citizens of different states from those on the other; and, if on each side there were more than one person, then all the persons on one side were required to be citizens of the state in which the suit was brought, and all the persons on the other side, citizens of some other state or states, and all the latter who had the right of removal were required to unite in the petition. Case of the Sewing Machine Companies, 18 Wall. 553, 21 L. Ed. 914; Vannevar v. Bryant, 21 Wall. 41, 22 L. Ed. 476; Myers v. Swann, 107 U. S. 546, 2 Sup. Ct. 685, 27 L. Ed. 583; Iron Co. v. Ashburn, 118 U. S. 54, 6 Sup. Ct. 929, 30 L. Ed. 60; Hancock v. Holbrook, 119 U. S. 586, 7 Sup. Ct. 341, 30 L. Ed. 538. The act of 1887 deprives the plaintiff of this privilege, and gives it to any defendant who is a citizen of another state than that in which the suit is brought wherein there is a controversy between a citizen of

the state in which the suit is instituted and a citizen of any other state. It reads:

"And where a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the Circuit Court of the United States for the proper district."

This language appears to be clear and direct, and to strongly indicate that Congress intended that, in a suit in a state court in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant who is such citizen of another state may remove the suit to the federal court, whether his codefendants are citizens of the same state as the plaintiff or not. Congress broadly covered in its act every suit in which such a controversy arises between such parties, and granted the right of removal to any such defendant. It made no exception of suits in which some of the defendants were citizens of the same state as the plaintiff, and the legal presumption is that it intended to make no such exception. These and other considerations which are more exhaustively and convincingly set forth in the opinion of Judge Jackson (afterwards Mr. Justice Jackson of the Supreme Court) in Whelan v. New York, L. E. & W. R. Co. (C. C.) 35 Fed. 849, 851–861, 1 L. R. A. 65, and which it is unnecessary to repeat here, persuade that the true construction of this clause of the act of 1887 is that any defendant who is a citizen of another state than that in which a suit is brought may remove it to the federal court for local influence, although some of his codefendants are citizens of the same state as the plaintiff. This conclusion has received th approval of Judge Thayer in one of his lectures at the St. Louis Law School (Campbell v. Milliken [C. C.] 119 Fed. 985); of Pardee, Circuit Judge, and Newman, District Judge, in Haire v. Rome R. Co. (C. C.) 57 Fed. 321, 323; has at least escaped the disapproval of Chief Justice Fuller in Wilder v. Iron Co. (C. C.) 46 Fed. 687; and is sustained by the great weight of authority (City of Detroit v. Detroit City Ry. Co. [C. C.] 54 Fed. 15; Bonner v. Meikle [C. C.] 77 Fed. 485, 489; Hall v. Chattanooga Agricultural Works [C. C.] 48 Fed. 599, 605; Adelbert College v. Toledo, etc., Ry. Co. [C. C.] 47 Fed. 836, 845; Fisk v. Henarie [C. C.] 32 Fed. 417, 422; Reeves v. Corning [C. C.] 51 Fed. 774, 778).

The conclusion of this whole matter is that upon the filing of the petition for removal in the Weldon suit the record in that case disclosed a removable suit, the jurisdiction of the state court over the suit and the property it involved immediately ceased, the jurisdiction of the Circuit Court attached, and when, in October, 1903, that court renounced its jurisdiction in the Weldon suit, and seized the personal property under its writ in the action of replevin, it acquired lawful and exclusive jurisdiction of that property, and plenary jurisdiction to retain and apply it to the satisfaction of the judgment upon the merits which it should render in the action of replevin. The order to return this property to the state court and the judgment of dismissal of the action were therefore erroneous. The Circuit Court, which had once acquired the custody and jurisdiction of the property in the action of replevin,

had the power, and it was its duty, to retain it, to adjudicate the rights, of the parties to it, and to apply the property to the execution of its judgment, and it could not lawfully renounce the power or evade the duty.

Nor does the fact that another judge of co-ordinate jurisdiction, who entertained views of the law different from those which inspired the action of Judge Lochren, who denied the motion to remand in September, 1903, subsequently, in April, 1904, granted another motion to remand the Weldon suit, more than five months after the seizure of the personal property under the writ of replevin, militate against this conclusion. The complication which results from the latter order is another illustration of the wisdom of the rule "that the various judges who sit in the same court should not attempt to overrule the decisions of each other, especially upon questions involving rules of property or of practice, except for the most cogent reasons." Shreve v. Cheesman, 69 Fed. 785, 791, 16 C. C. A. 413, 418; Plattner Implement Co. v. International Harvester Co. (C. C. A.) 133 Fed. 376. But the order which remanded the Weldon suit in April, 1904, transferred to the state court no jurisdiction over the personal property or its proceeds, because the Circuit Court then had no such jurisdiction in that suit. In October, 1903, it had lawfully renounced its jurisdiction of that property in the Weldon suit, and had legally taken actual custody and full jurisdiction of it under its writ in the action of replevin. Hence, when the Weldon suit returned to the state court, the custody and jurisdiction of the personal property and of its proceeds remained in the Circuit Court in the action of replevin, and the state court was without right, jurisdiction, or authority to take, receive, or interfere with it until the final judgment of the Circuit Court upon the merits of the controversy in that action had been rendered and executed.

Moreover, even if the state court had acquired and yet retained potential jurisdiction of the personal property in the Weldon suit, it had not taken or sought to take, and it had not acquired, the actual custody and possession of it; and until, by its receiver, sheriff, or other proper officer, it requested that custody and possession, the Circuit Court should have retained it or delivered it to the bank. It might have been that the state court would never have required or taken it. It would have been soon enough to have surrendered it in any event when an officer of the state court appeared and offered to receive and hold it under the order or authority of that court. Meanwhile, and until such an officer did appear, it was the plaintiff, and not the defendants in the action of replevin, that was entitled, under the defaulted mortgages to the bank, and the affidavit and bond in replevin, to the possession of the property, if the Circuit Court was to surrender it; and for this reason, also, the order to return it, not to the custody of the state court or of its officer, but to Fritzlen, the defaulting mortgagor, from whom the marshal had taken it, was erroneous.

Finally, if the jurisdiction and custody of the personal property had vested in the state court, that fact would have presented no sufficient ground for a dismissal of the action of replevin, and there was no other reason for that judgment. The custody, control, and jurisdiction of the property pertained not to the jurisdiction of the controversy, nor

of the action between the parties, to its trial, or to the decision of the issues it presented, but to the execution of the judgment that might subsequently be rendered in it. It was not more essential to the trial and adjudication of the issues than custody and jurisdiction of the money of a debtor required to pay a judgment that may be rendered against him upon a contract are to the jurisdiction and trial of the action upon the contract. It is no defense to an action for a debt that the debtor has not, and probably never will obtain, the means to pay it, and that the court has no jurisdiction of property to satisfy it. And it is no defense to an action against defendants for the possession and delivery of personal property that they have it, but that a prior action is pending between the same parties for the same cause of action in a state court, and the defendants cannot foresee what the decision and action of that court may be. The action in the state court may be dismissed. It may result in a decree which will exhaust but a part, and leave the larger portion of the property involved in the controversies to respond to the judgment in the subsequent action. The pendency in a state court of a prior action to determine the same issues pending in a subsequent action in the federal court between the same parties presents no bar and furnishes no ground for the abatement of the later action. When the state court secures by proper process the custody or dominion of specific property, which it is one of the objects of the suit in the federal court to subject to its judgment or decree, the latter action should not be dismissed; but it should proceed as far as may be without creating a conflict concerning the possession of the property, and then be stayed until the proceedings in the state court have been concluded, or ample time for their termination has elapsed. Barber Asphalt Paving Co. v. Morris (C. C. A.) 132 Fed. 945, 948; Williams v. Neely (C. C. A.) 134 Fed. 1; Zimmerman v. So Relle, 80 Fed. 417, 420, 25 C. C. A. 518, 521; Gates v. Bucki, 53 Fed. 961, 965, 4 C. C. A. 116, 120.

The issues presented by the pleadings in this action challenged the existence and validity of the mortgages of the bank, and its rights under them to the property described in the complaint. These issues were susceptible of trial and adjudication regardless of the possession of the personal property during the pendency of the suit. The jurisdiction of the two courts was concurrent. That of neither excluded that of the other to try the same issues between the same parties. It is not the final judgment in the first suit, but the first final judgment, although it may be in the second suit, that renders the issues in such a case res adjudicata in the other court. Insurance Co. v. Harris, 97 U. S. 331, 336, 338, 24 L. Ed. 959. Hence, so long as the issues in the action in replevin had not been finally adjudged by the state court in the Weldon suit, the bank had the right to their hearing and decision in the federal court. The power was vested in that court, and the duty was imposed upon it—a duty which it might not lawfully renounce or avoid—to proceed with all convenient speed to try and determine by the exercise of its own independent judgment the controversy between citizens of different states which the action in replevin presented. Barber Asphalt Paving Co. v. Morris (C. C. A.) 132 Fed. 945, 951, 956.

The judgment of dismissal and the order for the return of the prop-

erty must be reversed, and the case must be remanded to the Circuit Court for further proceedings not inconsistent with the views expressed in this opinion, and it is so ordered.